[Civ. No. 64740. Second Dist., Div. Five. May 2, 1983.]

WORLDVISION ENTERPRISES, INC., Plaintiff and Appellant, v. AMERICAN BROADCASTING COMPANIES, INC., Defendant and Respondent.

590

**COUNSEL**

Hill, Farrer & Burrill, Jack R. White, William M. Bitting and Arthur B. Cook for Plaintiff and Appellant.

Wyman, Bautzer, Rothman, Kuchel & Silbert, Andrew M. White, Karen S. Newman and Stefan D. Stein for Defendant and Respondent.

## Opinion

**ASHBY, J.**—In this action for breach of fiduciary duty and negligent interference with prospective economic advantage, plaintiff Worldvision Enterprises, Inc., appeals from a summary judgment in favor of defendant American Broadcasting Companies, Inc. (Code Civ. Proc., § 437c.)

Plaintiff claims that defendant disparaged a television series called The Rookies while that series was being broadcast by defendant on its ABC television network. Alleging that plaintiff owned future distribution rights (syndication rights) to the program, plaintiff claims that the value of these rights was damaged by defendant's statements about The Rookies. We hold that as a matter of law defendant owed no duty to protect plaintiff's economic interests, and therefore the trial court properly granted summary judgment for defendant.

In the early 1970's, Spelling-Goldberg Productions produced this television series, which depicted the adventures of two young police officers. Pursuant to a contract between defendant and Spelling-Goldberg, defendant held the network television broadcast rights for the series for five broadcast seasons commencing in the fall of 1972.

In late 1974, plaintiff entered into a written agreement with Spelling-Goldberg to acquire the syndication rights to The Rookies, that is, the right to distribute the series, commencing in the fall of 1977, to independent broadcasters and to network affiliates for broadcast during hours not pledged to network programing. In early 1975, plaintiff conducted a vigorous "preselling" campaign to numerous television stations.

For some time Congress had expressed concern that children were being exposed to excessive violence and sex on television. In June 1974, Congress had directed the Federal Communications Commission to submit a report outlining specific actions to deal with the problem. Believing that industry self-regulation was preferable to any attempted government regulation of program content, the FCC exerted pressure on the major television networks which led to the announcement by the networks in early 1975 that commencing in the fall 1975 season the first hour of each night of prime time network entertainment would be designated a "family viewing" period devoted to programing suitable for general family audiences.

On April 1, 1975, defendant announced that in the fall The Rookies' broadcast time would be changed from 8 p.m. to 9 p.m. because "certain episodes or programs of these series have contained and may continue to contain subject matter that all might not agree is appropriate for general family viewing."

Plaintiff in this case acknowledges the right of defendant to change the scheduled broadcast time of The Rookies.

Plaintiff does complain, however, of a speech made by Elton Rule, defendant's president, on May 29, 1975. The speech was given at the annual meeting of defendant's network affiliates. In discussing the difficulty of defining what is "appropriate" for family viewing, Mr. Rule stated, " 'The Rookies' has become a benchmark for family viewing. When we consider 'the appropriateness' for one time period or another of a series that occasionally deals with violent themes, we have something to measure it against." Plaintiff claims that after these remarks plaintiff's customers were no longer interested in purchasing The Rookies and that the value of plaintiff's syndication rights was thereby "destroyed."[1]

### FIDUCIARY DUTY

Plaintiff contends there is a triable issue of fact as to the existence of a confidential relationship between plaintiff and defendant which imposed upon defendant a fiduciary duty not to damage plaintiff's syndication rights. Plaintiff relies primarily on the fact that the executives of plaintiff corporation were former employees of defendant and the allegation that the two corporations had developed a cooperative working relationship to their mutual advantage.

Plaintiff traces its corporate origin to a rule adopted by the Federal Communications Commission in 1970 which prohibited the major television networks from engaging in the domestic syndication of any television programs. The rule was designed to remove any network incentive to choose for network exhibition those programs in which the network had acquired syndication rights

---

[1]The parties devote major portions of their briefs to an issue raised by defendant whether plaintiff has any standing to bring this suit. Defendant argues that prior to the May 29, 1975, speech, plaintiff had repudiated its contract with Spelling-Goldberg Productions and therefore did not own the syndication rights which are the subject of this suit. In another action, plaintiff was the defendant in a suit brought by Spelling-Goldberg to enforce the contract. Plaintiff had contended that the contract remained executory because it was subject to a condition precedent that plaintiff provide a letter of credit to Spelling-Goldberg. Spelling-Goldberg contended that the letter of credit was a condition solely for its benefit, which could be waived. During depositions in the instant case, plaintiff's executives took the position that the contract never came into force because of the failure of the condition precedent. Thereafter the contract litigation was settled, with Spelling-Goldberg retaining the $500,000 down payment which plaintiff had made. Defendant cites the deposition testimony in this case and argues that the statements therein constituted binding judicial admissions that plaintiff did not own the syndication rights to The Rookies. Plaintiff replies that the statements were not statements of fact but mere opinions based on erroneous legal conclusions interpreting the contract, and that plaintiff is not precluded from now taking the position that plaintiff was bound by the contract and had an ownership interest which was damaged by defendant's conduct. We find it unnecessary to resolve these contentions because even assuming there is a triable issue of fact as to plaintiff's ownership interest, defendant's lack of liability to plaintiff is clear.

and to enable independent producers to become more competitive. (*In re Columbia Pictures Industries, Inc.* (1971) 30 F.C.C.2d 9, 10, affd. *sub nom.*, *Iacopi* v. *F.C.C.* (9th Cir. 1971) 451 F.2d 1142.) To implement the rule, defendant was required to divest itself of its subsidiary, ABC Films, Inc., which had been engaged in syndication. Plaintiff corporation was formed by five executives of ABC Films, Inc., for the purpose of acquiring the stock of ABC Films. The purchase agreement was expressly intended to comply with the FCC rule.

No inference of confidential relationship is raised by the status of plaintiff's key officials as former employees of defendant's subsidiary. In *Odorizzi* v. *Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 129 [54 Cal.Rptr. 533], the court said, "Under prevailing judicial opinion no presumption of a confidential relationship arises from the bare fact that parties to a contract are employer and employee; rather, additional ties must be brought out in order to create the presumption of a confidential relationship between the two. [Citation.] The absence of a confidential relationship between employer and employee is especially apparent where, as here, the parties were negotiating to bring about a termination of their relationship. In such a situation each party is expected to look after his own interests, and a lack of confidentiality is implicit in the subject matter of their dealings." Plaintiff's chief executive officer, Kevin O'Sullivan, acknowledged in his deposition that the negotiations for the purchase were lengthy, tedious, difficult, and at arm's length. The purpose of the purchase agreement was to comply with the FCC rule, which intended that the syndication business would move into the hands of a separate entity "where the directors and officers of each corporation have a duty to serve the best interests of their company without regard to the interests of the other company." (*In re Columbia Pictures Industries, Inc., supra,* 30 F.C.C.2d at p. 15.) Such a relationship is wholly inconsistent with the fiduciary relationship advocated by plaintiff.

Plaintiff contends that a triable issue of fact is raised by the description of the working relationship of the corporations by Mr. O'Sullivan in his affidavit in opposition to the motion for summary judgment. Mr. O'Sullivan makes such statements as: "Since that merger, Worldvision has continued to carry on the business of ABC Films, Inc. using the same key personnel and same worldwide sales organization with a few changes which occurred after 1975. [¶] . . . The owners, including ABC, could depend upon us to give them accurate and proper and prompt reports. By the same token, ABC recognized that its own properties would be entrusted for syndication to persons with a business track record, to wit, their own employees of long standing. . . . In other words, a substantial selling point which I expressed to Rule was the mutual trust between ABC and their former employees—they could trust us with their properties and

we could trust them with respect to fair dealings with these properties. . . . [¶] There was a very definite on-going relationship which required confidence between the parties. . . . [¶] . . . [¶] Both Worldvision and Affiant reposed trust and confidence in ABC in that ABC would not do any act which would diminish the value of the syndication rights vested in Worldvision.''

The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law. (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 124 [44 Cal.Rptr. 268]; *Gosnell* v. *Lloyd* (1932) 215 Cal. 244, 254 [10 P.2d 45].) Plaintiff's assertion is insufficient to create a triable issue of fact which would preclude summary judgment. (See *Hayward Union etc. School Dist.* v. *Madrid, supra.*)

Mr. O'Sullivan also declared: "Due to the fact that properties syndicated by Worldvision are first possessed and broadcast by ABC on network television, ABC possesses great power to control, protect, advance, or destroy the syndication rights in the properties in which Worldvision has a vested interest. Accordingly, ABC has great power to control the economic life of the properties they show." The same sort of power could be attributed to any important supplier or customer of a business. The fact that two corporations do much business with each other does not create a fiduciary relationship. (See *Ruhl* v. *Mott* (1898) 120 Cal. 668, 678, 679 [53 P. 304].)

Plaintiff also argues that defendant "controlled" "property contemporaneously owned" by plaintiff and that this control gave rise to a fiduciary duty by way of analogy to a husband's control over community property (*Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 337-338 [15 Cal.Rptr. 71, 364 P.2d 247]) or to a life tenant and remainderman (see Civ. Code, § 818; Rest., Property, § 204.) The authorities cited do not support plaintiff's position. The fiduciary duty in *Vai* arose because by statute the husband had management and control of the community property, in which husband and wife shared equal ownership interests under one of the recognized forms of joint ownership of property. (*Vai* v. *Bank of America, supra,* 56 Cal.2d at pp. 336-338; see Civ. Code, §§ 682, 5105.) Here plaintiff and defendant do not share ownership of The Rookies nor can their interests be classified as life tenant and remainderman. Furthermore, even under Restatement view, the relation between a life tenant and remainderman in property other than land does not amount to the fiduciary relation of trustee and beneficiary. (Rest., Property, § 204 & com. a, pp. 843-846; see also pp. 754-755.) Plaintiff has raised no triable issue of fact as to the existence of a fiduciary duty. While defendant's decision on how to promote The Rookies during its initial broadcast seasons could affect the value

of the program in the syndication market, the question whether this created a duty of care toward plaintiff's economic interests is best addressed in the next section under the negligence standard.

## NEGLIGENCE

 Plaintiff next argues that defendant owed plaintiff a general duty of due care not to damage plaintiff's prospective economic interests. Plaintiff cites *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60], a leading case holding that a plaintiff's interests in prospective economic advantage may be protected against injury occasioned by negligent conduct. The Supreme Court set forth six criteria for determining whether a duty of care is owed: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. (*Id.,* at p. 804.) In connection with the last factor, countervailing public policies which may preclude recovery must also be considered. (*Id.,* at p. 804, fn. 1.)

 Even assuming a sufficiently close connection between defendant's statements and plaintiff's injury and that the harm to plaintiff was foreseeable, the other factors compel a conclusion that defendant owed no duty toward plaintiff.

All defendant did in this case was to voice an opinion, through its president, on the merits of a series of dramatic productions and on an issue of significant public interest which had been addressed by Congress, the Federal Communications Commission, and the press: the difficult question of defining what is appropriate television programing for exposure to children. Strong public policy favors defendant's right to comment without malice on matters of public interest. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 310, pp. 2580-2582. See *Rollenhagen* v. *City of Orange* (1981) 116 Cal.App.3d 414, 420 [172 Cal.Rptr. 49].) There is no evidence at all that defendant's comment was intended to harm plaintiff's syndication rights, that defendant bore any malice, ill will or hatred toward plaintiff, or that the opinion was dishonestly held and given for an ulterior motive to harm plaintiff. (4 Witkin, *op. cit. supra,* at p. 2581.) The speech was given to defendant's network affiliates, who bore a special relationship to defendant and who had an interest in knowing defendant's broadcasting philosophy and the reasons for defendant's scheduling decisions. (See 4 Witkin, Summary of Cal. Law, Torts, *supra,* at § 307, p. 2578; *Cal-Medicon* v. *Los Angeles County Medical Assn.* (1971) 20

Cal.App.3d 148, 152 [97 Cal.Rptr. 530]; Civ. Code, § 47, subd. 3.) Public policy as reflected in privileges relevant to defamation law has been considered in connection with various torts involving injuries to economic relations, including prospective economic advantage. (Prosser, Torts (4th ed. 1971) §§ 128, 129, 130, pp. 915, 924, 942-944, 953-954; *Cal-Medicon* v. *Los Angeles County Medical Assn.*, *supra*, 20 Cal.App.3d at p. 152; see Rest.2d Torts, § 646A.)

In considering whether there should be recovery for negligent interference with prospective economic advantage, courts and commentators have suggested that a balancing is required among societal interests, the interests of the plaintiff in freedom from interference, and the interests of the defendant in maximum freedom of economic action. (See Note, *Negligent Interference With Economic Expectancy: The Case for Recovery* (1964) 16 Stan.L.Rev. 664, 675-679; see also *Bledsoe* v. *Watson* (1973) 30 Cal.App.3d 105, 108 [106 Cal.Rptr. 197] [intentional interference]; Rest.2d Torts, § 767 [same].) In a freely competitive economy both the defendant and the society have an interest in the defendant's freedom to pursue his own economic gain. (See *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) "To the extent that respect for others' interests is demanded of defendant and enforced by the imposition of liability, a real burden of attention and possibly expense is thrust upon him. The defendant has a legitimate interest in a maximum amount of freedom to order his own affairs without being under an excessively extensive duty of care toward the interests of others." (Note, *supra*, 16 Stan.L.Rev. at p. 676, fn. omitted.) Here the defendant has a legitimate right to make programing and scheduling decisions to promote its own economic interests and its judgment of the public interest. If defendant could be held liable on a negligence theory to the owners of syndication rights of each program presently broadcast by defendant, programing decisions would be impossible because scheduling or promoting one program at a particular time necessarily excludes all other programs from that time slot, arguably damaging the other syndicators. Moreover, we are told in *J'Aire Corp.* v. *Gregory*, *supra*, 24 Cal.3d at page 808, that recovery for negligent interference with prospective economic advantage will be denied where the injury is "part of the plaintiff's ordinary business risk." In this case plaintiff must have known or assumed, when it purchased the syndication rights while the series was still being broadcast initially on the network, that the value of the program in syndication could be either enhanced or diminished by defendant's decisions how to promote the program. Having taken that business gamble, plaintiff cannot complain that defendant chose to deemphasize the youth market for the program.

In its reply brief, plaintiff says that it "does not contend ABC had a duty to slant its programing judgment to serve Worldvision's commercial interests.

. . . Rather, we contend only that ABC had a duty to act fairly toward Worldvision and to refrain from causing *unnecessary and avoidable injury to Worldvision*" and that defendant could have satisfied its programing interests "without publicly pointing to 'The Rookies' as the benchmark for the rest of the industry to measure what is too violent for family viewing." (Italics in original.) However, defendant's qualified privilege to comment on matters of public importance and to communicate its views to its affiliates precludes imposing liability for the consequences of the speech.

Thus considering the various factors in *J'Aire Corp.* v. *Gregory, supra,* 24 Cal.3d at page 804, defendant owed no duty of care to plaintiff because defendant's conduct was not intended to harm plaintiff, defendant's conduct was not morally blameworthy, no specific public policies would be served by imposing liability and several countervailing public policies preclude recovery.

The judgment is affirmed.

Feinerman, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied May 25, 1983, and appellant's petition for a hearing by the Supreme Court was denied July 13, 1983.