[No. B003329. Second Dist., Div. Four. May 1, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
BEN NAZARETH THREESTAR, Defendant and Appellant.

748

COUNSEL

Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gray R. Hahn and Patra Woolum, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ARGUELLES, J.**—Ben Nazareth Threestar (appellant) appeals from the judgment entered following a jury trial in which he was convicted of grand theft with imposition of an additional one year term for taking in excess of $25,000 (Pen. Code, §§ 487, subd. 1, 12022.6, subd. (a)).[1]

The two questions which we address in this embezzlement case are: (1) whether the trial court erred by failing to instruct the jury, *sua sponte,* on the affirmative defense set forth in section 511; and (2) whether the standard jury instructions on embezzlement, CALJIC Nos. 14.07 and 14.08 (4th ed. 1979),[2] correctly state the law with respect to embezzlement by an employee agent. Answering both questions affirmatively, we conclude that failure to instruct the jury *sua sponte* on all of the elements contained in section 511 was reversible error under the facts of this case, but that the standard embezzlement instructions set forth in CALJIC Nos. 14.07 and 14.08 properly stated the law of embezzlement applicable to the prosecution's version of those facts.

FACTS

In 1978, Barbara Tomlinson (Tomlinson) formed a corporation that was later known as Product Innovators (P.I.) to invent and market various products. She had previously patented three inventions in her own name and was somewhat familiar with the patent application process.

Within a year after the original corporation was formed, Tomlinson hired Manny Duran (Duran) and later appellant. Tomlinson and Duran had been working on a design for a stereo speaker stand and asked appellant to design an improved version of it.

---

[1]All statutory references are to the Penal Code, unless otherwise indicated.

[2]All CALJIC jury instructions referred to are from the fourth edition (1979), unless otherwise noted.

At about the same time, an attorney hired by Tomlinson was working on the corporate organization of P.I. so that Tomlinson, Duran and appellant would constitute the board of directors, occupy offices of secretary-treasurer, president and vice president, respectively, and be issued 100 shares of stock each. Tomlinson was to front the money necessary to start up the business; Duran was to promote, distribute and sell all P.I. products; and appellant was to help design, promote and sell P.I. products. Duran and appellant each were to be paid a salary of $2,000 per month.

Appellant conceived a design for the improved speaker stand and the attorney working on the corporation start-up referred appellant to another attorney, Francis Utecht, for a patent application. Utecht recommended that the patents obtained by appellant, as inventor, be assigned to P.I.

Shortly thereafter, Tomlinson advised Utecht by letter to proceed immediately with a patent application for the speaker stands. She told Utecht that the patent should be listed and registered in the P.I. name because P.I. was going to own it. By reply letter, Utecht advised Tomlinson that he understood the patents were to be assigned to P.I. as soon as P.I. was formed.

At the first P.I. board of directors meeting on April 25, 1978, Tomlinson, Duran and appellant discussed how the business operations of P.I. would be conducted. In regard to appellant, it was agreed that he would be responsible for inventing products, and that he would turn over products and patents to the corporation. As evidenced by the corporate minutes of the board meeting, appellant agreed to grant P.I. sole and exclusive license to use of his patents as long as P.I. was "solvent and existing." Appellant's signature, when obtained, was "deemed sufficient to grant said license."

The business offices opened with only Duran and appellant involved in its day-to-day affairs while Tomlinson worked at another full-time job.

Appellant had Utecht submit a patent application for another speaker stand design that appellant claimed he invented, although Tomlinson argued that the design was the result of the combined talents of several people in the corporation.

Attorney Utecht subsequently advised P.I. in writing that appellant refused to execute any assignment for patents to the corporation until he had a written agreement with P.I. Although Tomlinson and Duran were upset by this, no further action was taken to resolve the matter.

After nine months of operation, P.I. had accumulated an inventory of speaker stands it had manufactured but had made no sales revenue. Tomlin-

son ceased paying salaries to Duran and appellant, closed P.I.'s business offices, and announced that she would take over as president. Tomlinson explained these actions in her testimony at trial as follows: "When I decided not to pay salaries any more and close the office down, then I didn't feel that it was necessary to be paying salaries any more because there was no sales coming in. So everybody made their own arrangements to do their own thing, and I would still handle Product Innovators on my own. I became president then." As for the others, Duran resigned and turned in his stock while appellant decided to open his own business to sell stereo cabinets and furniture under the name of Threestar Enterprises.

Tomlinson claimed at trial that she and appellant also entered into a business arrangement whereby appellant was to sell the P.I. speaker stands that had previously been manufactured on a percentage-of-sales commission basis.

Appellant had the speaker stands transferred with Tomlinson's knowledge to a warehouse he had rented. Tomlinson believed that the speaker stands were the property of P.I.

Prior to the closing of the P.I. offices, appellant had been negotiating with a stereo components retailer for sale of the speaker stands. In fact, one sale was consummated with the retailer before P.I. closed its doors, netting P.I. $18,350.65. Tomlinson knew of this sale.

After the closure of P.I.'s business, however, and after appellant allegedly entered into the oral commission sales arrangement with Tomlinson, appellant represented to the retailer's buyer that he was the sole representative for sale of the speaker stands, and that the speaker stands would no longer be associated with P.I., "past, present or future" because his relationship with P.I. had been severed, and he possessed all patent rights.

Additional speaker stands that had not been ordered by P.I. were shipped to appellant's warehouse.

Appellant consummated four sales of speaker stands to the stereo retailer in the months of February, April, May and August 1979. The proceeds from these sales were approximately $87,000 of which he paid Tomlinson $21,000. Tomlinson was not informed about the April and May sales.

At trial, he claimed that the amounts paid to Tomlinson out of these sales were not pursuant to any commission sales agreement but rather constituted a voluntary effort to help her recoup her losses in the corporation.

Appellant admitted to Tomlinson and her attorney in a meeting with them in the attorney's office that, at one point, he altered one of the purchase orders that he previously had shown to Tomlinson to reflect a lower price and lesser quantity of stands sold in order to stifle her complaints to him for money. Appellant promised to make restitution, and he subsequently entered into other business ventures with her though none of them were successful.

In 1981, Tomlinson ended all business relationships with appellant and went to the police.

## CONTENTIONS

On appeal, appellant contends: (1) "The trial court failed to correctly instruct the jury as to the elements of proof of the conviction offense, and the order granting probation must therefore be reversed"; (2) "The trial court committed prejudicial error in failing to correctly instruct sua sponte on the affirmative defense specified by Penal Code Section 511, and the judgment must therefore be reversed"; (3) "The trial court committed prejudicial error in failing to instruct the jury sua sponte regarding the effect of the doctrine of election"; and (4) "Appellant's restitution probation condition is illegal as an improper delegation of judicial power, and this case must be remanded for reconsideration of that condition."

## DISCUSSION

We first address appellant's second contention concerning the trial court's alleged failure to properly instruct the jury *sua sponte* on the affirmative defense of section 511 because our disposition of that issue affects appellant's remaining contentions.

*I. Failure to Instruct the Jury Sua Sponte on the Affirmative Defense in Section 511*

Appellant contends that he advanced two theories in his trial defense: (1) that he was not an agent of P.I. or Tomlinson when he sold the speaker stands; and (2) that he had a subjective belief that he lawfully could sell the speaker stands. Appellant argues that the latter theory is an affirmative defense to embezzlement under section 511, which provides in relevant part: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable."

In support of his contention that the trial court had a duty to instruct the jury *sua sponte* on this defense, appellant relies in part upon *People* v.

*Stewart* (1976) 16 Cal.3d 133 [127 Cal.Rptr. 117, 544 P.2d 1317]. In *Stewart,* the Supreme Court held that the trial court erred in failing to give, *sua sponte,* a properly worded instruction on the defense where there was evidence that defendant was relying on that defense. (At p. 140.) Moreover, the court held, quoting from *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913], " '. . . [S]uch error cannot be cured by weighing the evidence and finding it not reasonably probable that a correctly instructed jury would . . .' not have convicted the defendant." (*People* v. *Stewart, supra,* at p. 141; see *People* v. *Alvarado* (1982) 133 Cal.App.3d 1003, 1020, fn. 6 [184 Cal.Rptr. 483].) A reference to the trial court's duty to instruct the jury *sua sponte* on the section 511 defense in embezzlement cases even appears in the "Use Note" to the standard embezzlement instruction, CALJIC No. 14.07.[3]

*People* v. *Vineberg* (1981) 125 Cal.App.3d 127, 138 [177 Cal.Rptr. 819], held that, "In the absence of some evidence from which it can be inferred that defendants' alleged belief in the lawfulness of their conduct was in good faith, the court was under no duty to instruct the jury that a good faith mistake of law constituted a defense to the action."

■ In the present case, however, there was evidence indicating that appellant possessed a good faith belief in the lawfulness of his conduct. In asserting that title to the patented speaker stand designs entitled him to take possession of the speaker stands for his own use after P.I. closed its doors and ceased paying him a salary because it had no more money, appellant relies on the following facts: (1) he designed the speaker stands and was listed on the patent applications as the inventor; (2) he never formally assigned his patent rights to P.I. and advised P.I., through its attorney, that he would not execute an assignment of his rights until such time as he had a written agreement regarding his inventions with P.I.; (3) at P.I.'s first board of directors meeting, he stated that he would agree to grant P.I. a license to use his patented designs only so long as the corporation was "solvent and existing"; (4) P.I. ceased to be "solvent and existing" when it closed its business offices and ceased paying its employees salaries because of a lack of money; (5) appellant told Tomlinson when P.I. closed its doors and stopped paying him a salary that he would go out on his own and sell the speaker stands; (6) he represented to a potential customer, the stereo retailer, that the speaker stands were no longer associated with P.I., past, present or future, that his relation with P.I. was severed and that he pos-

---

[3]The "Use Note" to CALJIC No. 14.07 provides: "Where defendant is charged with embezzlement, if it appears that he relies on the defense of openly and avowedly appropriating the property under a claim of title preferred in good faith (Penal Code, § 511), the court must give, sua sponte, a correct instruction of that defense. People v. Stewart, 16 Cal.3d 133, 127 Cal.Rptr. 117, 544 P.2d 1317."

sessed all patent rights; and (7) he told Tomlinson that he would give her as much as he possibly could from sales of the speaker stands in order to help her recoup her financial losses in the failed corporation. We must conclude, therefore, that from this evidence arose the inference that appellant was relying on the affirmative defense set forth in section 511 and that the trial court had a duty to instruct the jury sua sponte on this defense. While it is true that defense counsel apparently never specifically mentioned section 511 when the proposed jury instructions were discussed at trial, nevertheless, "the asserted defense was a principle 'closely and openly connected with the facts before the court' . . . [citations] in which event defendant was entitled to have the question presented to and determined by the jury." (*People* v. *Stewart, supra,* 16 Cal.3d at p. 140.)

■ We must next address the more difficult issue of whether the instructions that were given by the trial court adequately and properly set forth the section 511 defense.

The trial court instructed the jury that: "An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful." (CALJIC No. 4.35.) The court also gave the following instructions, which comprised the court's modification of one of appellant's requested special instructions based on *People* v. *Navarro* (1979) 99 Cal.App.3d Supp. 1 [160 Cal.Rptr. 692]: "If one takes business proceeds in the good faith belief he has permission to keep such proceeds he is not guilty of theft. [¶] This is the case even if such good faith belief is unreasonable. [¶] The claim of a good faith belief on the part of the defendant must be a genuine and honest one, and not a mere cover for the crime of theft as herein defined in these instructions. [¶] If you conclude defendant had a moral duty to help Barbara Tomlinson recoup the losses she may have suffered in 1978, but at the same time you have a reasonable doubt as to the defendant's guilt of the charge you must acquit him."

When compared with the elements set forth in section 511, we find that the instructions given by the court were inadequate and potentially misleading and confusing to the jury. Section 511 sets forth three elements: (1) an open and avowed appropriation of property; (2) "under a claim of title"; (3) "preferred in good faith, even though such claim is untenable."

The third element of section 511 was embodied in the court's modification of the defense special instruction which provided that if one takes business

proceeds in the *good faith belief* he has permission to keep them, *even if* his good faith belief is *unreasonable,* he is not guilty of theft.

However, the difficulty arises with that portion which read, "good faith belief he has *permission to keep such proceeds.*" Under the second element, defendant need only assert a good faith belief "under a claim of title." While there was evidence at trial that appellant's claim of lawful appropriation of the speaker stands and proceeds from their sale was based on his title to their patent rights, the court's instruction did not advise the jury that appellant's good faith belief based on his patent rights could constitute a defense to embezzlement. Instead, the court's instruction that appellant was required to have a good faith belief that he had "permission to keep" business proceeds may have misled and confused the jury into believing that appellant was required to have a good faith belief that he had been given some kind of express or implied permission from Tomlinson to keep the proceeds of the speaker stand sales. While such language addresses one theory of the evidence, that appellant and Tomlinson were in an employment business relationship governed by the alleged commission sales agreement, with appellant as an employee of Tomlinson, it does not address the defense theory of the evidence that no such sales agreement existed and that both appellant and Tomlinson were only former directors and officers of the insolvent and no longer existing corporation at the time of the alleged embezzlement.

■ The first element of section 511, that the appropriation was open and avowed, was also omitted from the instructions given. While there was evidence of appellant's concealment from Tomlinson of the sale price and number of speaker stands sold, there was also evidence that appellant's appropriation of the speaker stands was open and avowed in the following: (1) his express refusal to assign his patent rights to P.I.; (2) his agreement to grant P.I. a license to use those patent rights only so long as P.I. was solvent and existing; (3) his letter to the stereo retailer advising that because P.I. was out of money and had severed its relation with him, he now had the right to sell the speaker stands because he possessed the patent rights on them; and (4) his allegedly informing Tomlinson that he intended to sell the speaker stands as his own product and that he moved them to his warehouse with Tomlinson's consent.

"It is true that a failure to instruct where there is a duty to do so can be cured if it is shown that 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' [Citation.]" (*People* v. *Stewart, supra,* 16 Cal.3d at p. 141.) In the instant case, however, under the instructions given by the court, we conclude that the jury did not necessarily find that appellant lacked

a good faith belief that he was acting pursuant to a lawful "claim of title" based on his patent rights.

The court's failure to properly instruct the jury on the section 511 defense was prejudicial error.

■ As to what constitutes a proper instruction on the section 511 defense, we find an advisory comment from the court in *People* v. *Yarbrow* (1978) 86 Cal.App.3d 445, 446 [150 Cal.Rptr. 324], to be instructive: "In case of a retrial, and the giving of an instruction on section 511 of the Penal Code, we see no reason not to give the *complete* applicable portion of the section rather than omitting a few words: [¶] 'Upon any indictment for embezzlement, it is sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable.'"

One of appellant's remaining contentions addresses alleged inadequacies in the standard jury instruction for embezzlement (CALJIC No. 14.07) which is likely to be proposed in the event of retrial. Therefore, we will comment briefly on that contention.

*II. Failure to Correctly Instruct on Embezzlement*

■ Appellant contends that the trial court erred in failing to correctly instruct the jury on the elements of proof of embezzlement and that such error was prejudicial.

In support of his contention, appellant argues that the trial court failed to correctly instruct the jury, *sua sponte,* on one of the elements of proof of the charged offense of theft by embezzlement when it instructed the jury that it need find only a relation of "trust and confidence" between Tomlinson or P.I. and appellant rather than giving a requested instruction on employee agency. Appellant maintains that an instruction articulating the prosecution's burden of proving employee agency was required because the prosecution's theory was that appellant was employed by P.I. pursuant to a verbal agreement as an agent cn a commission basis, and that "by virtue of his employment" appellant was to turn over the sales proceeds to P.I.

The significance of the prosecution's theory in relation to the instructions given, asserts appellant, is that there are two separate and distinct crimes of embezzlement, each requiring different elements of proof. The first type of embezzlement is fraudulent appropriation by an *employee agent;* the second type is fraudulent appropriation by a *trustee agent.* Relying on sections 508 and 506-506a, respectively, appellant contends that *employee agent* em-

bezzlement requires proof of an agency relationship based on employment whereas trustee agent embezzlement requires proof of an agency relationship not based on employment.

Such a distinction on the facts of this case is illusory.

"The type of relationship essential to finding embezzlement has been variously characterized. The property or money must be received by the defendant as an agent or bailee of the true owner [citation]. There must be a fiduciary relationship between the parties [citation]. The statute names several common trust relationships, but *the list is not exclusive.* [Citation.]" (*People* v. *Smith* (1984) 155 Cal.App.3d 1103, 1143 [203 Cal.Rptr. 196]; italics added.)

█ A fiduciary duty arises whenever trust and confidence are reposed by a person in the integrity and fidelity of another. (*Credit Managers Assn.* v. *Superior Court* (1975) 51 Cal.App.3d 352, 360 [124 Cal.Rptr. 242]; *Estate of Arbuckle* (1950) 98 Cal.App.2d 562, 568-569 [220 P.2d 950, 23 A.L.R.2d 372].)

Early California cases established that such a fiduciary or confidential relationship existed between a corporate officer or director and the corporation as a basis for embezzlement. (*People* v. *Talbot* (1934) 220 Cal. 3 [28 P.2d 1057], *People* v. *Leonard* (1895) 106 Cal. 302 [39 P. 617].) The evidence in the present case was that appellant was at one time a stockholder, director and vice president of P.I.

Appellant correctly points out that the alleged incidents that formed the basis for the theft charge occurred after P.I., through Barbara Tomlinson, ceased paying appellant a salary and closed its corporate office. The original agreement appellant had with P.I., as reflected in the corporate minutes of the April 25, 1978, board of directors meeting, was that he granted the corporation sole and exclusive license to the use of his patents only so long as the corporation was "solvent and existing." When P.I. ceased paying him a salary and closed its offices, appellant argues that it was no longer solvent and existing. Additionally, appellant and the other officers contemplated a written assignment for the patents to P.I. but appellant never executed such an agreement. Thereafter, he started up his own business, Threestar Enterprises. He also represented to the stereo retailer who purchased the speaker stands that the speaker stands had no association with P.I., past, present or future, and that all sales of speaker stands would be through his own company, Threestar Enterprises. At about the same time, there was conflicting evidence that he entered into a new agreement with Tomlinson to sell the stands on a percentage commission basis with the

proceeds to go to P.I. There was also conflicting evidence as to whether appellant had ever resigned as a director and officer of P.I. In any event, he retained his corporate stock.

"Under prevailing judicial opinion no presumption of a confidential relationship arises from the bare fact that parties to a contract are employer and employee; rather, additional ties must be brought out in order to create the presumption of a confidential relationship between the two. (Annot., 100 A.L.R. 875.)" (*Odorizzi* v. *Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 129 [54 Cal.Rptr. 533]; accord *Worldvision Enterprises, Inc.* v. *American Broadcasting Companies, Inc.* (1983) 142 Cal.App.3d 589, 594 [191 Cal.Rptr. 148].) Even if the prosecution's theory was that appellant was an employee of P.I. at the time of the alleged incidents of theft, additional ties between appellant and P.I. were demonstrated by evidence that appellant obtained possession of the speaker stands by virtue of the trust and confidence reposed in him as at least former vice president of P.I. and by conflicting evidence that he was still vice president at the time the alleged appropriation occurred.

■ Appellant's argument that a substantive distinction can be drawn between the "agent" identified in section 506 and the "agent" referred to in section 508 is untenable. As stated above, those statutes are merely illustrative of the types of relationships that may give rise to the relation of trust and confidence required to support an embezzlement charge and incorporated in CALJIC No. 14.07, given by the trial court. Moreover, sections 506 and 508, as well as the first section in chapter 6 identifying persons liable for embezzlement, section 504, all speak to the liability of an "agent." Indeed, the only material difference in this regard between section 504 and section 508 is that the former refers to the "clerk, servant, or agent of any association, society, or *corporation*" (italics added) whereas the latter section refers to the "clerk, agent, or servant of any *person* . . . ." (Italics added.)

As the above discussion demonstrates, whether appellant was the "agent" of P.I. as a director and corporate officer or as an employee and former director and officer is of little consequence here. Therefore, the trial court did not err in giving CALJIC Nos. 14.07 and 14.08 without giving a further instruction on employee agency.

*III. Appellant's Remaining Contentions*

In view of our reversal of the judgment for failure to properly instruct on the section 511 defense, we find it unnecessary to address appellant's re-

maining contentions which present issues that will not necessarily recur in the event of retrial.

## DISPOSITION

The judgment is reversed.

Woods, P. J., and Dunn, J.,* concurred.

A petition for a rehearing was denied May 21, 1985, and respondent's petition for review by the Supreme Court was denied July 10, 1985. Mosk, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.