[No. H029753. Sixth Dist. Nov. 21, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILIP RUSSELL, Defendant and Appellant.

1416

COUNSEL

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Ann P. Wathen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**McADAMS, J.**—Defendant Philip Russell was convicted by jury of one count of receiving a stolen motor vehicle (Pen. Code, § 496d),[1] a felony. The jury also acquitted defendant of one count of possessing drug paraphernalia (Health & Saf. Code, § 11364), a misdemeanor. In a bifurcated proceeding before the court, defendant admitted allegations that he had one prior felony conviction that qualified as a strike under the three strikes law (§§ 667, subds. (b)–(i), 1170.12).

The court denied defendant's motion for new trial and his request to reduce the receiving stolen property count to a misdemeanor. At sentencing, the court granted defendant's *Romero*[2] motion and struck the strike prior. The court suspended imposition of sentence and placed defendant on formal probation for four years on the condition that he serve one year in jail. The court imposed other probation conditions and fines. Since defendant had accumulated 403 days of custody credits, the court concluded that his jail commitment had been satisfied and released defendant from custody.

On appeal, defendant contends there was insufficient evidence to support his conviction for receiving a stolen vehicle because his honest, even if

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530–531 [53 Cal.Rptr.2d 789, 917 P.2d 628].

mistaken, belief that the motorcycle was abandoned negated the felonious intent element of the offense. Defendant also contends the court prejudicially erred when it failed to instruct the jury on the mistake-of-fact and claim-of-right defenses, which would have negated the intent element of the offense. Finally, defendant contends his trial counsel was ineffective because she failed to request the mistake-of-fact and claim-of-right instructions, failed to object on the grounds of prosecutorial misconduct to questions and argument that suggested defendant should have made more of an effort to locate the registered owner of the motorcycle, and failed to object to opinion evidence by one of the police officers. We conclude there was prejudicial instructional error and reverse the judgment.

FACTS

### I. Prosecution Case

About 4:00 p.m. on Sunday, March 6, 2005, Doug Foster was riding his 1982 Yamaha motorcycle on Highway 280 in San Jose when the motorcycle stopped running. Foster knew there was a motorcycle repair shop nearby. He pushed the motorcycle to the repair shop, which was located behind the Cycle Gear motorcycle accessories store on Parkmoor Avenue in San Jose. According to Foster, Cycle Gear and the repair shop were separate businesses.

When Foster arrived, the repair shop was closed. Foster parked the motorcycle next to a fenced area near the repair shop; trash bins were located inside the fenced area. Foster did not leave the keys with the motorcycle, however he did not lock the forks to the motorcycle. He went into Cycle Gear and told a salesperson he was leaving the motorcycle at the repair shop. The salesperson told him the repair shop was closed on Monday and suggested he call on Tuesday morning.

When Foster called the repair shop the following Tuesday about his motorcycle, the person he spoke to said, "What motorcycle?" Foster reported the motorcycle missing to the police either on Tuesday, March 8, 2005, or the following day. The officer told Foster he could not take a report until Foster went to the repair shop and confirmed the motorcycle was not there. This took some time and the police report was not completed until March 19, 2005.

Foster told the jury the motorcycle was in "decent shape" and estimated it was worth about $500. He had just spent $300 on a new tire and seat cover and had changed the oil and spark plugs.

On March 30, 2005, San Jose Police Officers Lisa Gannon and Ellen Ciaburro responded to a complaint about a homeless encampment near

Parkmoor Avenue and Race Street in San Jose. The officers walked through a hole in a cyclone fence along Highway 280 and saw a tent in the foliage. Foster's motorcycle was parked in a parking lot 50 to 100 feet from the tent. The officers did a license plate check and discovered the motorcycle had been reported stolen. Officer Gannon found a pipe that is used to smoke controlled substances in plain view inside the tent.

As Officer Ciaburro exited the fenced area, defendant rode up on a bicycle. Officer Ciaburro, who was in plain clothes, showed defendant her badge and asked him what business he had in the area. He said he lived in the tent. The officer asked if he knew who the motorcycle belonged to and he said it was his. The officer placed defendant in handcuffs, told him the motorcycle had been reported stolen, and read him his *Miranda*[3] rights. Defendant waived his *Miranda* rights and was eager to talk to the officer about the motorcycle.

Defendant told Officer Ciaburro he found the motorcycle around 4:00 a.m. on March 7, 2005, in a commercial parking lot near Parkmoor and Meridian. He said he contacted an employee in a nearby shop, who told him a man had left the motorcycle there. Defendant told the officer he did not have the keys to the motorcycle and had walked it back to his camp. He "punched the ignition," which is the same as hot-wiring a car, to get it running. Officer Ciaburro searched defendant and found a traffic citation dated March 14, 2005, for a traffic violation involving the motorcycle. The citation listed Foster as the registered owner of the motorcycle.

## II. *Defense Case*

### A. *Defendant's Testimony*

Defendant testified. In March 2005, he was homeless. He lived in the tent near Parkmoor Avenue and Race Street and operated a mobile bicycle repair business, repairing bicycles at his clients' homes or offices.

Defendant got up early on March 7, 2005, to recycle. About 4:00 a.m., he saw the motorcycle sitting next to the large trash receptacles behind Cycle Gear and thought it was abandoned. The following factors led defendant to conclude the motorcycle was abandoned: (1) the front right turn signal was covered with packing tape; (2) there was rust on the mirror, the post to the mirror, the exhaust pipes, and fenders; (3) there were cobwebs and leaves in the front wheel; (4) the aluminum cast blocks on the motor were severely tarnished; (5) the motorcycle was located next to the trash area; (6) the registration tags had expired 22 months before; (7) the forks on the motorcycle were not locked. Defendant frequented the area and knew the repair

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

shop's policy was to bring all the motorcycles that were being repaired inside the shop at night. Defendant testified he assumed someone left the motorcycle there for the repair shop to use for parts or that the owner had told the repair shop not to do the work because it was going to cost more than the motorcycle was worth. The motorcycle had been left in neutral, so defendant wheeled it to his camp.

About 11:00 a.m. that morning, defendant went to Cycle Gear and spoke with a salesperson about the motorcycle. The salesperson told him it was not one of their motorcycles because the repair shop brings the motorcycles inside at night and said Cycle Gear was not responsible for things that are left behind.

During the week that followed, defendant took the battery out of the motorcycle and had the repair shop recharge it, replaced the spark plugs, changed the oil, drained and flushed the fuel tank, and tuned up the motorcycle.

On March 14, 2005, about 5:30 a.m., defendant was riding the motorcycle with a friend on the back when he was pulled over by Officer Kate Reyes for a traffic violation.[4] He told the officer he found the motorcycle behind Cycle Gear and had just gotten it running the night before. He told the officer he had "punched the ignition" to start the motorcycle. The officer ran the vehicle identification number (VIN) on the motorcycle and told defendant the motorcycle had not been reported stolen. Defendant told the officer he intended to fix the motorcycle and register it in his own name. The officer wrote up a traffic citation. Defendant asked her to put the name of the registered owner on the ticket. The officer let defendant keep the motorcycle as long as he promised to walk it and not ride it.

At 1:00 p.m. that same day, defendant went to Foster's apartment at the address listed on the citation. He wanted to register the motorcycle in his name and hoped Foster would sign the motorcycle over to him. Defendant spoke with Terry Stultz, the apartment manager, who told him Foster had not lived there for 18 months. Defendant told Stultz he had found Foster's motorcycle and hoped Foster would sign the motorcycle over to him. Stultz did not know Foster's new address.

Defendant testified regarding his encounter with Officers Gannon and Ciaburro on March 30, 2005. For the most part, his testimony was consistent with Officer Ciaburro's testimony. He told Officer Ciaburro he found the

---

[4] In limine, the parties stipulated that evidence that defendant was cited by Officer Reyes because he did not have a motorcycle helmet, a driver's license or insurance would be excluded.

motorcycle, assumed it was abandoned, "punched the ignition," tried to contact Foster, and had been stopped by another officer, who told him the motorcycle was not stolen.

Defendant told the jury he had prior convictions for grand theft and robbery in 2001.

On cross-examination, defendant admitted that he knew the place where he found the motorcycle was a repair shop and that people take motorcycles there to be fixed. He agreed the motorcycle was intact when he found it. He never asked the salesperson at Cycle Gear whether someone had left the motorcycle there for repairs or whether someone was waiting to take parts from it. He thought Cycle Gear and the repair shop were "connected," and were not separate businesses. He did not contact the Department of Motor Vehicles (DMV), the phone company, or the police for help in finding Foster. He did not ask anyone in the repair shop about the motorcycle when he got the battery recharged.

## B. *Corroborating Evidence*

Officer Ciaburro returned to the stand and testified on behalf of defendant. For the most part, her testimony corroborated portions of defendant's testimony. However, her testimony differed from defendant's in the following respects: (1) defendant said he had seen the motorcycle on more than one occasion before he took it; (2) he took the motorcycle *after* he spoke with the employee at Cycle Gear; and (3) she could not recall defendant saying the motorcycle was abandoned.

Terry Stultz, the manager of Foster's apartment complex, testified that defendant had come to the apartment complex looking for Foster because he had found an abandoned motorcycle that was registered to Foster. Stultz told defendant Foster had moved many years before and suggested defendant contact the DMV.

Officer Reyes testified that she stopped defendant on the motorcycle on March 14, 2005. He told her he did not have the registration for the motorcycle because he had found it abandoned a day or two before near a transient camp. She ran a check on the license plate or the VIN number. She told defendant the motorcycle had *not* been reported stolen and put the registered owner's contact information on the citation. She put the registered owner information on the citation as a matter of routine, not because defendant asked her to. Officer Reyes could have impounded the motorcycle since the registration had expired and defendant did not have a license. Instead, she told defendant not to drive it.

DISCUSSION

## I. Instructional Error

Defendant contends the court had a sua sponte duty to instruct the jury on the mistake-of-fact and claim-of-right defenses. He argues the court prejudicially erred when it failed to instruct regarding these defenses since a finding that either defense applied would have negated the intent element of the offense.

### A. Standard of Review

Errors in jury instructions are questions of law, which we review de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569 [76 Cal.Rptr.2d 239, 957 P.2d 928].)

### B. Duty to Instruct Sua Sponte

" 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' " (*People v. Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913] (*Sedeno*), disapproved on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 149 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (*Breverman*) & *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) "The duty to instruct, *sua sponte*, on general principles closely and openly connected with the facts before the court also encompasses an obligation to instruct on defenses, . . . and on the relationship of these defenses to the elements of the charged offense." (*Sedeno*, at p. 716.) However, in the case of defenses, "a sua sponte instructional duty arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.' " (*Breverman*, at p. 157.) When the trial court believes there is substantial evidence supporting a defense that is inconsistent with that advanced by the defendant, the court should ascertain from the defendant whether he or she wishes instructions on the alternative theory. (*Ibid.*) Moreover, there is no sua sponte duty to instruct on a defense if the evidence of that defense is minimal or insubstantial. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145 [74 Cal.Rptr.2d 121, 954 P.2d 384] (*Barnett*).)

## C. *Mistake-of-fact Defense*

■ To sustain a conviction for receiving stolen property, the prosecution must prove: (1) the property was stolen; (2) the defendant knew the property was stolen (hereafter the knowledge element); and, (3) the defendant had possession of the stolen property. (*People v. Land* (1994) 30 Cal.App.4th 220, 223 [35 Cal.Rptr.2d 544], citing *People v. Kunkin* (1973) 9 Cal.3d 245, 249 [107 Cal.Rptr. 184, 507 P.2d 1392].)

Although receiving stolen property has been characterized as a general intent crime, the second element of the offense is knowledge that the property was stolen, which is a specific mental state. With regard to the knowledge element, receiving stolen property is a " 'specific intent crime' " as that phrase is used in sections 22, subdivision (b)[5] and 28, subdivision (a).[6] (*People v. Reyes* (1997) 52 Cal.App.4th 975, 985 [61 Cal.Rptr.2d 39] (*Reyes*) [in prosecution for receiving stolen property, order excluding evidence of defendant's mental disorders and their exacerbation by drug abuse denied defendant the opportunity to prove he lacked knowledge that the property was stolen].) The defendant therefore should have an opportunity to request instructions regarding the lack of requisite knowledge. (*Id.* at p. 986.)

■ At common law, an honest and reasonable belief in the existence of circumstances, which, if true, would make the act with which the person is charged an innocent act, was a good defense. (*People v. Lucero* (1988) 203 Cal.App.3d 1011, 1016 [250 Cal.Rptr. 354], citing *Matter of Application of Ahart* (1916) 172 Cal. 762, 765 [159 P. 160].) A person who commits an act or makes an omission under a mistake of fact which disproves his or her criminal intent, is excluded from the class of persons who are capable of committing crimes. (§ 26, par. Three.)

■ The standard jury instruction on the mistake-of-fact defense, Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 3406,[7] provides: "The defendant is not guilty of _____ <*insert crime[s]*>

---

[5] Section 22, subdivision (b) provides in relevant part: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent . . . ."

[6] Section 28, subdivision (a) provides in part: "Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

[7] Defendant cites CALJIC No. 4.35, which provides: "An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime. [¶] Thus, a person is not guilty of a crime if [he] [she] commits an act or omits to act under an actual [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make the act or omission lawful." The use note instructs that "[i]n

if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ <insert crime[s]>. [¶] If you find that the defendant believed that _____ <insert alleged mistaken fact[s]> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for _____ <insert crime[s]>. [¶] If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes)." The bench notes instruct: "If the defendant is charged with a general intent crime, the trial court must instruct with the bracketed language requiring that defendant's belief be both actual and reasonable. [¶] If the intent at issue is specific criminal intent, do not use the bracketed language requiring the belief to be reasonable." Since receiving stolen property is a specific intent crime with regard to the knowledge element, the jury need not be instructed that the mistake of fact had to be objectively reasonable for the defense to apply. (CALCRIM No. 3406; *Reyes, supra,* 52 Cal.App.4th at p. 985.)

The mistake-of-fact defense has been applied in a case involving the belief that property has been abandoned. In *People v. Navarro* (1979) 99 Cal.App.3d Supp. 1 [160 Cal.Rptr. 692] (*Navarro*), an oft-cited appellate department case,[8] the defendant was charged with grand theft for taking four wooden beams from a construction site. There was evidence "from which the jury could have concluded that [the] defendant believed that the wooden beams had been abandoned and that the owner had no objection to his taking them. . . ." (99 Cal.App.3d at p. Supp. 5.) In light of the evidence, the defendant requested special mistake-of-fact instructions. The proposed instructions informed the jury that someone who takes personal property with the good faith belief that the property has been abandoned or that he has permission to take the property is not guilty of theft even if that good faith belief is unreasonable. (*Id.* at p. Supp. 3.) Although the trial court instructed on the mistake-of-fact defense, it modified the defendant's proposed instructions by instructing that the good faith belief, either that the property was abandoned or that the person had permission to take the property, had to be reasonable. (*Ibid.*)

---

specific intent or mental state crimes, delete the bracketed phrase 'and reasonable.' Mistakes of fact, however, must be reasonable to negate general criminal intent."

[8] (See, e.g., *People v. Wooten* (1996) 44 Cal.App.4th 1834, 1849 [52 Cal.Rptr.2d 765]; *People v. Threestar* (1985) 167 Cal.App.3d 747, 755–756 [213 Cal.Rptr. 510]; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 39, p. 371; CALCRIM No. 1863, Authority, p. 1335.)

The jury convicted the defendant of theft, but the appellate department of the superior court reversed. (*Navarro, supra*, 99 Cal.App.3d at p. Supp. 11.) The court explained that " 'an honest mistake of fact or law is a defense when it negates a required mental element of the crime . . . .' " (99 Cal.App.3d at p. Supp. 10.) Quoting from LaFave and Scott, which used the crime of receiving stolen property as an example, the opinion reasoned " 'if the defendant by a mistake of either fact or law did not know the goods were stolen, even though the circumstances would have led a prudent man to believe they were stolen, he does not have the required mental state and thus may not be convicted of the crime.' " (99 Cal.App.3d at p. Supp. 10, quoting LaFave & Scott, Handbook on Criminal Law (1972) Justification and Excuse, § 47, p. 537.) Applying these rules to the facts before it, the *Navarro* court concluded that "the trial court in effect instructed the jury that even though defendant in good faith believed he had the right to take the beams, and thus lacked the specific intent required for the crime of theft, he should be convicted unless such belief was reasonable. In doing so it erred. It is true that if the jury thought the defendant's belief to be unreasonable, it might infer that he did not in good faith hold such belief. If, however, it concluded that defendant in good faith believed that he had the right to take the beams, even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable man, defendant was entitled to an acquittal since the specific intent required to be proved as an element of the offense had not been established." (99 Cal.App.3d at pp. Supp. 10–11, fns. omitted.)

■ The court has a sua sponte duty to instruct on mistake of fact if the defendant relies on the defense or if there is substantial evidence that supports the defense and the defense is not inconsistent with the defendant's theory of the case. (*People v. Lucero, supra*, 203 Cal.App.3d at p. 1018 & fn. 4; *Breverman, supra*, 19 Cal.4th at p. 161.)

### D. *Claim-of-right Defense*

■ The claim-of-right defense developed in the common law as a defense to larceny or robbery. (*People v. Tufunga* (1999) 21 Cal.4th 935, 945 [90 Cal.Rptr.2d 143, 987 P.2d 168] (*Tufunga*).) " ' "Although an intent to steal may ordinarily be inferred when one person takes the property of another, particularly if he [or she] takes it by force, proof of the existence of a state of mind incompatible with an intent to steal precludes a finding of either theft or robbery. It has long been the rule . . . that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. [Citations.] A belief that the property taken belongs to the taker [citations], or that he [or she] had a right to retake goods sold [citation] is sufficient to preclude felonious intent. Felonious intent exists only if the

actor intends to take the property of another without believing in good faith that he [or she] has a right or claim to it." ' " (*Id.* at p. 943, citing *Barnett, supra,* 17 Cal.4th at pp. 1142–1143.)

" 'Whether a claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith.' [Citations.] For example, the circumstances in a particular case might indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (*People v. Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].)

The claim-of-right defense has been rejected for public policy reasons when force, violence, or weapons are used to satisfy, settle, or collect on a debt. (*Tufunga, supra,* 21 Cal.4th at pp. 950–953.) In *Tufunga,* the court explained that the claim-of-right defense does not apply to "robberies perpetrated to satisfy, settle or otherwise collect on a debt, liquidated or unliquidated—as opposed to forcible takings intended to recover specific personal property in which the defendant in good faith believes he has a bona fide claim of ownership or title . . ." because it is unsupported by the statutory language and contrary to sound public policy. (*Id.* at p. 956.)

The claim-of-right defense was codified for embezzlement cases in section 511, which provides: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him." (See *People v. Wooten, supra,* 44 Cal.App.4th at pp. 1848–1849.) Our state Supreme Court has held that "section 511 may be read as providing a statutory claim-of-right defense to all theft-related charges, as broadened from embezzlement through the provisions of section 490a."[9] (*Tufunga, supra,* 21 Cal.4th at pp. 952–953, fn. 4.) Under section 511, the defendant must take the property "openly and avowedly." A lack of concealment may be considered as evidence of good faith and the absence of a felonious intent. (*People v. Stewart, supra,* 16 Cal.3d at p. 141.)

The parameters of the defense are set forth in detail in CALCRIM No. 1863, which provides: "If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/[or] robbery). [¶] The defendant obtained property under a claim of right if

[9] Section 490a provides: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor."

(he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it. [¶] In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith. [¶] [The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.] [¶] [The claim-of-right defense does not apply to offset or pay claims against the property owner of an undetermined or disputed amount.] [¶] [The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal.] [¶] If you have a reasonable doubt about whether the defendant had the intent required for (theft/[or] robbery), you must find (him/her) not guilty of _____ <insert specific theft crime>."

■ *Navarro, supra,* 99 Cal.App.3d Supp. 1, the mistake-of-fact case involving a defendant's mistaken belief that four wooden beams had been abandoned and that the defendant therefore had a right to take them, has also been cited as an example of the application of the claim-of-right defense. (*People v. Wooten, supra,* 44 Cal.App.4th at p. 1849; *People v. Threestar, supra,* 167 Cal.App.3d at pp. 755–756; CALCRIM No. 1863, Authority, p. 1335.) As in this case, a claim of right may be based on a mistake of fact regarding the defendant's right to take property, as long as the belief is held in good faith. Thus, the defenses can overlap.

■ If the defendant relies on a claim-of-right defense or if there is substantial evidence that supports the defense and the defense is not inconsistent with the defendant's theory of the case, the trial court must instruct sua sponte on the defense. (*People v. Creath* (1995) 31 Cal.App.4th 312, 319 [37 Cal.Rptr.2d 336], citing *People v. Stewart, supra,* 16 Cal.3d at p. 138; see *Breverman, supra,* 19 Cal.4th at p. 161.) Defendant attempted to negate the knowledge element by arguing he did not know the property was stolen because he believed it was abandoned.

E. *Sufficiency of Evidence to Support Mistake-of-fact and Claim-of-right Defenses*

We next consider whether there was evidence that supported giving the mistake-of-fact *or* claim-of-right instructions in this case. The court is not required to instruct on a claim-of-right defense unless there is evidence to

support an inference that the defendant " '*acted* with a subjective belief [that] he or she had a lawful claim on the property.' " (*Barnett, supra*, 17 Cal.4th at p. 1145.)

In assessing the evidence to determine whether to give an instruction, the trial court should not measure the substantiality of the evidence by weighing the credibility of the witnesses. That duty is within the exclusive province of the jury. However, the court need not give the instruction if the evidence is minimal and insubstantial. (*Barnett, supra*, 17 Cal.4th at p. 1145.) Finally, any doubt as to the sufficiency of the evidence to support the instruction should be resolved in favor of the accused. (*Ibid.*)

Although the jury was not required to believe it, defendant presented substantial evidence from which the jury could have inferred that he had a good faith belief that the motorcycle was abandoned. First, defendant testified repeatedly that he thought the motorcycle was abandoned.

Second, the condition and location of the motorcycle supported an inference that it had been abandoned. According to defendant, the 23-year-old motorcycle was rusty, the turn signal was covered with packing tape, there were cobwebs and leaves in the front wheel, the motor blocks were tarnished, and the registration had expired 22 months before. The apartment manager described it as "beat up" and said the starter was about to go. When defendant found it, the motorcycle was located near the trash area and was not inside the repair shop. It was not locked. In addition, defendant knew the repair shop's practice was to bring the motorcycles in at night.

Third, defendant's conduct could lead the jury to conclude that he had a good faith belief the motorcycle had been abandoned. Defendant went to Cycle Gear to inquire about the motorcycle after he took it to his camp. He assumed the repair shop and Cycle Gear were related businesses and a Cycle Gear employee told him the motorcycle did not belong to Cycle Gear. When he was stopped by Officer Reyes, he told her he had found the motorcycle "abandoned," he had punched the ignition to get it running, and intended to register it in his own name. Officer Reyes told him the motorcycle had *not* been reported stolen. After he learned the identity of the registered owner, he went to Foster's apartment, hoping to persuade Foster to sign the motorcycle over to him. He told the apartment manager he had found the motorcycle "abandoned." He did not sell the motorcycle, remove its license plate, or try to disguise it. Instead, he invested time and money to fix it up. He left the motorcycle parked in an open lot near his tent in broad daylight and told the police officer it belonged to him. He told Officer Ciaburro he thought the motorcycle was "abandoned" and that he had "punched the ignition." After

Officer Ciaburro told him the motorcycle had been reported stolen, he did not attempt to flee. He was friendly, cooperative, and eager to talk to the officer about the motorcycle.

Defendant's testimony that he had told the police officers and the apartment manager the motorcycle was abandoned was corroborated by Officer Reyes and the apartment manager. Officer Ciaburro could not recall defendant saying he thought the motorcycle was abandoned.

In summary, defendant acted as if he believed he was entitled to possess the motorcycle. He did not behave in a furtive manner or attempt to conceal the fact that he had taken the motorcycle or punched its ignition. Moreover, this evidence was not minimal or insubstantial.

At trial, defendant's primary defense was that he did not know the motorcycle was a stolen vehicle because he believed the motorcycle had been abandoned. Defense counsel did not request mistake-of-fact or claim-of-right instructions. However, the trial court had a sua sponte duty to instruct on both of these defenses if it appeared defendant was relying on the defenses, or if there was substantial evidence supportive of the defenses and they were not inconsistent with defendant's theory of the case. (*Breverman, supra,* 19 Cal.4th at p. 157.) Both the mistake-of-fact and claim-of-right defenses were implicated by defendant's claim that he did not have the requisite knowledge that the motorcycle was stolen because at all times he held a good faith belief that it had been abandoned.

For these reasons, we conclude there was substantial evidence that supported instructing the jury on the claim-of-right and mistake-of-fact defenses and that the trial court erred when it failed to instruct the jury on these defenses.

### F. *Prejudice*

Error in failing to instruct on the mistake-of-fact defense is subject to the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (*People v. Mayer* (2003) 108 Cal.App.4th 403, 413 [133 Cal.Rptr.2d 454].) It is not clear what standard applies to cases involving error in instructing on the claim-of-right defense. In cases involving other kinds of defenses, courts have applied the *Watson* standard. (See, e.g., *People v. Randle* (2005) 35 Cal.4th 987, 1003 [28 Cal.Rptr.3d 725, 111 P.3d 987] [imperfect defense of others]; *People v. Blakeley* (2000) 23 Cal.4th 82, 93 [96 Cal.Rptr.2d 451, 999 P.2d 675] [unreasonable self defense].) In cases

involving the court's sua sponte duty to instruct regarding lesser included offenses, the California Supreme Court has concluded "that in a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under" the *Watson* standard. (*Breverman, supra,* 19 Cal.4th at p. 178.) Articulating that standard, the court explained that a "conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred . . . ." (*Ibid.*)

Applying the *Watson* standard, which is less rigorous than the "harmless beyond a reasonable doubt" standard under *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*), we conclude that the error in failing to instruct with the mistake-of-fact and claim-of-right defenses was prejudicial in this case. Appellate review under *Watson* "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Breverman, supra,* 19 Cal.4th at p. 177.) "There is a reasonable probability of a more favorable result within the meaning of *Watson* when there exists 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result.' " (*People v. Mower* (2002) 28 Cal.4th 457, 484 [122 Cal.Rptr.2d 326, 49 P.3d 1067], citing *People v. Watson, supra,* 46 Cal.2d at p. 837.)

The Attorney General contends that any error in instructing the jury was harmless beyond a reasonable doubt because the issue of whether defendant knew the motorcycle was stolen was decided under other instructions (regarding the elements of the offense and the reasonable doubt standard) and the evidence supporting a finding that defendant knew the motorcycle was stolen was so overwhelming that a rational jury could not reach a contrary result. The Attorney General argues: "By finding defendant guilty . . . , the jury necessarily found that defendant knew the motorcycle was stolen, rejected defendant's claim of abandonment, and resolved the issue of his mental state against him."

Since the defenses at issue negate one of the elements of the offense, defendant needed only to raise a reasonable doubt regarding the existence of that element. (*People v. Mower, supra*, 28 Cal.4th at pp. 479–480.) The jury was not instructed that a good faith belief that the motorcycle had been abandoned or a mistake of fact on the question of whether the motorcycle had been abandoned would negate the knowledge element of the offense. These instructions would have clarified the knowledge element by ensuring that the jury understood that a good faith belief, even an unreasonable good faith belief, would negate one of the elements of the offense. The instructions also would have drawn the jury's attention to facts that could raise a reasonable doubt about defendant's guilt. In our view, instructions on the applicable defenses would have been more valuable to the jury than instructions regarding the elements of the offense plus attorney argument that the prosecution had not proven the knowledge element because defendant believed the motorcycle had been abandoned. When the court instructs on the law, it provides a framework for the jury's analysis and judicial recognition of the applicable defenses.

We disagree with the Attorney General's assertion that the evidence supporting a finding that defendant knew the motorcycle was stolen was so overwhelming that a rational jury could not reach a contrary result. The evidence that defendant believed the motorcycle had been abandoned was relatively strong. As set forth above, defendant's belief that the motorcycle had been abandoned was based on the age, appearance, and location of the motorcycle, the motorcycle's outdated registration, defendant's testimony, and actions of defendant on multiple occasions. In addition, defendant's testimony regarding his actions and mental state was corroborated by independent witnesses.

For these reasons, we conclude it is reasonably probable defendant would have obtained a more favorable result if the jury had been instructed with the defenses at issue.

## II. *Remaining Issues*

Since we conclude the instructional errors require reversal, we shall not reach defendant's claims regarding the sufficiency of the evidence to support his conviction or the effectiveness of his counsel.

### DISPOSITION

The judgment is reversed.

Mihara, Acting P. J., and Duffy, J., concurred.