Filed 9/2/15  P. v. Ngo CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CUONG CHINH NGO, Defendant and Appellant. | B262341 (Los Angeles County Super. Ct. No. GA093334) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Suzette Clover, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Cuong Chinh Ngo (defendant) on two counts of unauthorized use of personal information, in violation of California Penal Code section 530.5. The evidence at trial established that defendant obtained the checking account number of a third party and told his girlfriend to use the account number when paying utility bills. We are asked to decide whether the trial court should have granted the defense request to give a "mistake of fact" jury instruction (CALCRIM No. 3406) to pinpoint for the jury defendant's argument that he did not know he lacked lawful authorization to use the account number when he provided it to his girlfriend.

**BACKGROUND**

In April 2014, Wa Hing Chan noticed two charges to his Citibank checking account that he did not authorize, one from the Southern California Gas Company and the other from the Walnut Valley Water District. Chan reported the charges to the police.

Detective Bing Han of the Monterey Park Police Department investigated the unauthorized charges. He learned that the service address associated with both charges was a residence in West Covina where defendant's girlfriend was living; he also discovered that both payments had been made using her mobile phone number. Detective Han visited the West Covina residence and spoke to defendant's girlfriend. Han asked her to call defendant, which she did, and Han spoke to defendant over the phone.

Admissions made by defendant during the phone conversation with Detective Han were the heart of the prosecution's case. Han testified that defendant admitted he obtained the account information used to make the two payments to the utility companies. Defendant told Han that a man named "Ben" he met at the Commerce Casino gave defendant a check and told him that he "could make payments using the information on the check" to satisfy a $300 debt that Ben owed defendant. Defendant admitted that he gave the checking account information to his girlfriend to use to make the two utility payments. Defendant provided Detective Han with a phone number that he claimed was Ben's, but when Han called the number it was not in service.

2

During the phone conversation, Han asked defendant about the information on the check. According to Han, defendant initially said he wasn't paying attention to whose name was on the check, "but it wasn't the same name." Han also testified that defendant initially denied knowing something was wrong with the check. After Han asked defendant a couple more times, however, defendant admitted that he figured something was not right about the check. Han asked defendant if he knew the information on the check was stolen, and defendant said "yes." Defendant also told Detective Han that his girlfriend did not know that the account number she used to make the payments was from a stolen check.

Defense counsel cross-examined Detective Han about the questions he did not ask defendant during the phone conversation. Detective Han conceded he had not asked defendant when it was that he first noticed the name on the check wasn't Ben's. Han also testified that he had not asked defendant when it was that he figured out there was something that wasn't right with the check, nor had he asked defendant when it was that "he kind of knew that the check had a problem with it." Defendant did not present any evidence after the close of the prosecution's case.

When conferring with the court regarding jury instructions, the prosecution asked for an instruction on an aiding and abetting theory of liability, using CALCRIM Nos. 400 and 401. The court agreed. The defense requested the court give a mistake of fact instruction, CALCRIM No. 3406. Defense counsel argued the instruction was necessary "to pinpoint for the jury a deficiency in the prosecution's case because if [defendant] was unaware of the fact that Ben's name was not the name on the check at the time he initially received it or at some time prior to its usage, then he has not committed the crime." The court declined to give the instruction. The court found there was no substantial evidence justifying the instruction. The court also explained that the instructions on the elements of the offense and on aiding and abetting precluded finding defendant guilty if he did not have the requisite intent.

3

## DISCUSSION

Defendant claims the court should have instructed on mistake of fact and he argues the failure to give the instruction precluded him from presenting a defense. Our review is de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1424 (*Russell*).)

The defense of mistake of fact serves to negate the mental state required for a charged offense. (*People v. Lawson* (2013) 215 Cal.App.4th 108, 111; see also *People v. Larsen* (2012) 205 Cal.App.4th 810, 830 [pinpoint instruction draws jury's attention to evidence that highlights the relevant mental state].) It applies where a defendant has a mistaken belief in a fact or facts that, if true, establish the defendant's conduct was not unlawful. (*Russell*, *supra*, 144 Cal.App.4th at pp. 1425-1426; accord *People v. Hanna* (2013) 218 Cal.App.4th 455, 461 [quoting *People v. Reed* (1996) 53 Cal.App.4th 389, 396].) Where supported by substantial evidence—that is, evidence a reasonable jury could find persuasive—a request for a mistake of fact instruction should be granted. (*Russell*, *supra*, 144 Cal.App.4th at p. 1424; see also *People v. Salas* (2006) 37 Cal.4th 967, 982-983; *People v. Duckett* (1984) 162 Cal.App.3d 1115, 1124-1125.) But a court need not give a mistake of fact instruction where the evidence supporting it is minimal or insubstantial. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145; *People v. Flannel* (1979) 25 Cal.3d 668, 684; *Russell*, *supra*, 144 Cal.App.4th at p. 1427.)

There was no substantial evidence supporting a mistake of fact instruction in this case. Detective Han testified that defendant said "Ben" from the casino told him he could use the information on a check to make payments,[1] but Han testified that defendant admitted that he figured something was not right with the check. According to Han, defendant also admitted that he wasn't paying attention but "it wasn't the same name"

---

[1] As recounted by Detective Han, defendant said Ben told him he "could make payments using the information on the check." No one testified that Ben told defendant anything about the source of the account or his (Ben's) authority to offer the check as payment (e.g., that it was his account).

4

(Ben's name) on the check, that he (defendant) knew the check was stolen, and that his girlfriend didn't know that the checking account number she used was from a stolen check. As the trial court observed, there was no evidence introduced to the contrary, i.e., that defendant honestly believed that he had lawful authorization to use the account number on the check. The absence of any such substantial evidence is what makes this case different from *Russell*; in that case, the defendant testified that he believed a motorcycle he took had been abandoned and he even introduced additional evidence corroborating that belief. (*Russell*, *supra*, 144 Cal.App.4th at pp. 1430-1431.)

Defendant counters that such evidence does exist here. He points to the questions Detective Han conceded he did not ask defendant and argues "there is a reasonable inference that [defendant] only learned the check was no good after the payments were refused by the utility companies." That is not an inference; that is supposition. There was no affirmative evidence, sufficient to deserve consideration by the jury, to show defendant believed he had lawful authorization to use the account information he obtained. A mistake of fact instruction was not required.

Furthermore, the instructions the court did give permitted defendant to present his defense to the jury. The court instructed on the elements of identity theft and aiding and abetting, explaining that the prosecution must prove that defendant specifically intended to facilitate the commission of identity theft, which requires, among other things, the use of someone else's personal identifying information for an unlawful purpose. As the trial court explained when it discussed jury instructions with counsel, the instructions would therefore preclude a conviction unless the jury found defendant knew use of the account information was unauthorized when he gave the account number to his girlfriend: "[I]f he thought that the check was legitimate, then he wasn't using it for an unlawful purpose." Defense counsel relied on the instructions given to argue precisely that point in closing. We therefore reject defendant's contention that he was deprived of his due process right to present a defense; his defense was squarely before the jury even in the absence of a mistake of fact instruction. (*People v. Watt* (2014) 229 Cal.App.4th 1215, 1219-1220 ["Not only did the instruction at issue not foreclose the jurors from acquitting

5

defendant if they had a reasonable doubt that defendant knew the property had been stolen, it *expressly* required the jurors to acquit him if they had such a doubt."]; *People v. Hanna* (2013) 218 Cal.App.4th 455, 463 [no prejudice from absence of mistake of fact instruction where court correctly instructed on the elements of the offense]; *People v. Larsen*, *supra*, 205 Cal.App.4th at pp. 829-831.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

TURNER, P.J.

KRIEGLER, J.