Filed 2/2/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C093273 |
| Plaintiff and Respondent, | (Super. Ct. Nos. P19CRF0512, P19CRM0463, P19CRM0483,) |
| v. | |
| RICHARD WALTER SPECK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Kenneth J. Melikian, Judge. Reversed.

Deanna Lynn Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen, Supervising Deputy Attorney General, Ivan P. Marrs, Deputy Attorney General, for Plaintiff and Respondent.

1

A jury found defendant Richard Walter Speck guilty of felony vehicle theft (Veh. Code, § 10851, subd. (a)) and receiving stolen property (Pen. Code, § 496d) with special allegations that the Honda was valued at over $950.[1]

Defendant contends on appeal that the trial court prejudicially erred in failing to instruct the jury on mistake of fact. We agree and reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Testimony at trial established that on or about September 3, 2019, the chains had been cut off the gate at Placer Towing and a 2005 Honda Accord had been taken from the yard. Keys to multiple cars on the lot, including the Honda, had been taken from the trailer on the site. The Honda was gray, had no body damage or license plates, and had an intact interior; it was valued at $2,000. The office manager reported it stolen.

In the late afternoon of September 8, 2019, El Dorado County Deputy Sheriff Evan Richardson saw a Honda Accord with no front license plate. He followed the Honda and pulled it over into a grocery store parking lot. As Richardson pulled in behind the Honda, it appeared the passenger, later identified as Marqui Fullerton, and driver, later identified as defendant, began moving things from the front of the Honda to the rear passenger area. The Honda was spray painted matte black.

Defendant had the keys to the Honda, but the rear license plate did not match the car's vehicle identification number. The deputies searched the car and found its assigned license plate in the back seat. In the trunk, the deputies found a large pair of bolt cutters and a power drill that matched the dimensions of the screws used to secure the rear license plate. The inside of the car contained miscellaneous clothing, tools, and personal items, including a bag with women's clothing.

---

[1] Further undesignated statutory references are to the Penal Code.

Richardson testified that defendant told the deputies he had been taking Fullerton to the hospital as she was pregnant with his child. He had borrowed the Honda from "a guy named Jason" and this was the second time he had borrowed it. The previous time he had the car for almost two days and had been pulled over then as well, but without apparent consequences. Jason had painted the car and defendant had "touched over that" because Jason had not used car paint, but a kind of house paint. Jason had about seven other cars at the time he loaned defendant the Honda, and defendant did not ask Jason where the Honda came from or if it was stolen. Defendant claimed the spare license plate belonged to Fullerton and he had no information about the other plate. When Richardson told defendant the car was stolen, he responded: "You're kidding." Richardson noted the route defendant was traveling did not lead to the hospital, and other affiliated medical center offices were closed that day; Fullerton did not appear to need emergency care and refused offers to call an ambulance.

Defendant testified; he denied stealing the Honda and knowing it was stolen or had been reported stolen. He claimed he had permission to drive the car and did not think it was stolen because it had an ignition that required particular keys and he had been given those keys; there were no red flags such as a "ripped ignition" or evidence of hot-wiring.

Defendant's friend, Jason Rakellah, had an auto body shop and defendant was a mechanic. They met in the course of working on cars. Defendant had previously borrowed the Honda from Rakellah "a few days prior" and had kept it for a day and a half. When Fullerton called defendant and asked him for a ride to her prenatal care appointment, his truck was not working, so he again borrowed the Honda from Rakellah. He did not know whether the doctor's office was open; Fullerton told him she had an appointment so he assumed it was.

3

When defendant had previously borrowed the car it had been painted an "ugly teal color" with what appeared to be housepaint. Fullerton and defendant were not supposed to be together, as she had a criminal protective order naming him, so he "touch[ed] up" the paint job so the car would not draw "unneeded" attention. After he picked up the Honda from Rakellah, defendant retrieved tools from his house, and then picked up Fullerton. She did not "pack light," and put several bags of her belongings in the car. He had noticed the loose license plate in the back of the car, but assumed it was the car's front plate. He was unaware of the tools in the trunk of the car and had not been able to access the trunk earlier because the latch was broken.

The jury found defendant guilty as charged of both counts and the value allegations. The trial court sentenced him to the upper terms of three years in "county prison" for unlawfully driving a vehicle and three years for receiving stolen property, with sentence on the latter count stayed pursuant to section 654.

Defendant timely appealed from his sentencing as well as from his subsequent restitution order after a contested hearing. After delays in securing the entire requested record as well as delays in both parties' briefing, this case was fully briefed on July 29, 2021 and assigned to this panel on October 22, 2021.

DISCUSSION

Defendant contends the trial court prejudicially erred in denying his request to instruct the jury on mistake of fact. (CALCRIM No. 3406.) The Attorney General responds that the instructions were adequate as given and that any error was harmless.

Defendant has the better argument.

I

*Ruling and Relevant Jury Instructions*

Defense counsel requested the trial court instruct the jury with CALCRIM No. 3406 regarding mistake of fact, as to both counts, based on defendant's testimony that he *mistakenly but actually* believed he had permission from the owner--Jason, whom

4

defendant thought was the owner--to drive the car, which he mistakenly but actually believed was not stolen.

CALCRIM No. 3406, Mistake of Fact, provides: "The defendant is not guilty of *<insert crime[s]>* if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

"If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit *<insert crime[s]>*. If you find that the defendant believed that *<insert alleged mistaken facts>* [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for <insert crime[s]>.

"If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for *<insert crime[s]>*, you must find (him/her) not guilty of (that crime/those crimes)."

As we discuss in more detail, *post*, the Bench Notes to CALCRIM No. 3406 as well as relevant case law make clear that the bracketed language requiring that the lack of knowledge or mistaken belief be reasonable is not applicable to crimes requiring specific criminal intent, such as the two charges against defendant here.

Defendant's jury was provided with the following instructions as relevant to defendant's claim on appeal:

CALCRIM No. 1820, Unlawful Taking or Driving of a Vehicle (Veh. Code, § 10851(a), (b)), as given provides: "The defendant is charged in Count 1 with unlawfully taking or driving a vehicle in violation of Vehicle Code section 10851. [¶] To prove the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took or drove someone else's vehicle without the owner's consent; [¶] AND [¶] 2. When the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time."

5

CALCRIM No. 1750, Receiving Stolen Property (Pen. Code, § 496, subd. (a)), as given provides: "The defendant is charged in Count 2 with receiving . . . a stolen motor vehicle in violation of Penal Code section 496[, subd.] (a). [¶] To prove that the defendant is guilty of this crime, the People must prove: [¶] 1. The defendant received a motor vehicle that had been stolen; [¶] AND 2. When the defendant received the vehicle, he knew that the property had been stolen."

The trial court initially concluded that the testimony provided by defendant constituted substantial evidence of mistake of fact. After hearing argument on the People's objection to defendant's request for CALCRIM No. 3406, the court ultimately agreed with the People's position that CALCRIM No. 3406 should not be given regardless of the substantial evidence finding, ruling in relevant part: "One, it is an affirmative defense; it's in CALCRIM section of general offenses [*sic*, defenses]. Duress, threats, necessity, mistake of fact, mistake or entrapment, those are all affirmative defenses. If the jury believes Mr. Speck's testimony and they follow the jury instruction for CALCRIM [1]820 and CALCRIM 1750, they will find him not guilty. [¶] With regards to the 10851 charge, it's the second element of the offense that when the defendant did drive the vehicle, it belonged to someone else, he intended to deprive the owner of possession or ownership of the vehicle for any period of time. If he did not believe the item to be stolen, he could not be intending to deprive the owner of possession and ownership of the vehicle. 1750, 496, the second element is when the defendant received the motor vehicle, he knew the property had been stolen. Once again, the evidence presented by Mr. Speck can wipe out Element Number 2 in Instruction 1750 as well as 1820. I think adding 3406 gets a little bit confusing."

Although defense counsel continued to argue that the trial court's refusal to give the instruction was "taking away a defense," namely, that defendant *thought* he *had* the owner's consent, which was not explained as a defense in the instructions for the crimes themselves, the court disagreed and denied the request for the instruction.

6

II

*Analysis*

A.  *The Instruction Should Have Been Given Upon Request*

We review the trial court's refusal to give a requested jury instruction de novo. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1089, overruled on different point by *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)  A mistake of fact that disproves the required intent for a crime is a defense to criminal liability.  (*In re Jennings* (2004) 34 Cal.4th 254, 276.)  Generally, "a mistake of fact defense is not available unless the mistake disproves an element of the offense."  (*Id.* at p. 277.)  Put another way, a mistake of fact instruction is only appropriate where the defendant's mistaken belief negates an element of the crime.  (*People v. Givan* (2015) 233 Cal.App.4th 335, 345.)  The trial court does not have a sua sponte duty to give a mistake of fact instruction.  (*People v. Lawson* (2013) 215 Cal.App.4th 108, 117-118; see also *People v. Anderson* (2011) 51 Cal.4th 989, 997 [as to defense the defendant acted without intent, but accidentally].) The court is, however, required to give such an instruction on request, where a defendant presents substantial evidence on mistake of fact and the instruction is legally correct. (*Anderson*, at pp. 996-997.)  Whether the offense is a general or specific intent crime, "the defendant's mistaken belief must relate to a set of circumstances which, if existent or true, would make the act charged an innocent act."  (*Lawson,* at p. 115.)

Defendant's claimed mistake of fact was that he thought Rakellah was the Honda's owner.  Because he had taken the car with permission of the owner, or so he thought, whether he possessed the requisite intent (to permanently deprive the actual owner) would be irrelevant.  Also, if defendant mistakenly thought Rakellah was the owner, there is no way he would know the car was stolen under the facts as presented at trial, because he had received the car from Rakellah himself, the rightful owner per defendant's mistaken belief.  If credited, defendant's claim of mistake as to the Honda's owner--that it was Rakellah--would have negated the intent and knowledge requirements

7

of both offenses, and made the acts underlying the charged conduct, even if proven in all respects, innocent acts. Thus, defendant was entitled to receive the benefit of the pinpoint jury instruction outlining the mistake of fact defense, CALCRIM No. 3406.

The trial court found there was substantial evidence to support the instruction, and the Attorney General wisely does not argue on appeal that this finding was erroneous. Nor does he argue the instruction was legally insufficient. Instead, he argues the instruction was confusing and duplicative. Although the Attorney General cites case law that outlines the well-established proposition that confusing and duplicative instructions are not generally required to be given, his explanation as to why this general rule trumps the specific instructional requirements that we have outlined above, which clearly apply to this particular situation, falls short. As defendant argues in his reply, contrary to the Attorney General's contention, the intent elements in the two instructions given are not "synonymous" with the defense outlined by CALCRIM No. 3406.

The instructions that set forth the elements of the two charges of conviction (CALCRIM Nos. 1820 and 1750) required the jury to find knowledge and criminal intent. However, neither instruction informed the jury how it could consider the facts presented here--facts that the trial court properly found constituted substantial evidence of defendant's mistaken belief that Rakellah was the Honda's owner--in the context of theft such that the belief, even if unreasonable, could negate knowledge and intent. CALCRIM No. 3406 would have provided the jury with this information, telling the jury that it could consider defendant's mistake of fact, even if unreasonable, in determining whether he harbored the requisite intent or mental state required to commit the crimes.

We agree with defendant that CALCRIM No. 3406 "is not redundant but rather goes beyond the standard instructions by providing the necessary legal framework to assess how evidence of [defendant's] belief with respect to lawful possession relates to the elements of knowledge and intent." (See *People v. Russell* (2006) 144 Cal.App.4th 1415, 1430-1433 (*Russell*) [mistake of fact defense was implicated by the defendant's

8

claim that he did not have the requisite knowledge that the motorcycle was stolen because at all times he held a good faith belief that it had been abandoned; thus substantial evidence supported instructing the jury on that defense and failure to do so was prejudicial error], disapproved on another point by *People v. Covarrubious* (2016) 1 Cal.5th 838, 874, fn. 14.)  Under the applicable law that we have outlined above, the trial court erred in declining to give the applicable pattern instruction despite concluding substantial evidence supported the defense of mistake of fact.

B.  *The Error was not Harmless*

Error in failing to give a mistake of fact instruction is reviewed under *People v. Watson* (1956) 46 Cal.2d 818, 836; that is, asking the question of whether upon review of the entire record it appears reasonably probable defendant would have obtained a more favorable result absent the error.  (*Russell, supra,* 144 Cal.App.4th at p. 1431.)

The Attorney General first argues the error was harmless because "substantial evidence supported the jury's determination that [defendant] knew the vehicle was stolen."  This argument misstates the standard.  In evaluating what a jury is likely to have done in the absence of the error we " 'may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.'  [Citation.] 'There is a reasonable probability of a more favorable result within the meaning of *Watson* when there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result." ' "  (*Russell, supra,* 144 Cal.App.4th at p. 1432.)

Mistake of fact negates an entire element of the offense, thus "defendant needed only to raise a reasonable doubt regarding the existence of that element."  (*Russell, supra,* 144 Cal.App.4th at p. 1433.)  "For general intent crimes, the defendant's mistaken belief must be both actual and reasonable, but if the mental state of the crime is a specific intent

9

or knowledge, then the mistaken belief must only be actual." (*People v. Lawson, supra,* 215 Cal.App.4th at p. 115; see *Russell,* at pp. 1425-1426.) Unlawfully driving a vehicle with the intent to temporarily or permanently deprive the owner of possession under Vehicle Code section 10851 is a specific intent crime. (*People v. Jaramillo* (1976) 16 Cal.3d 752, 756, fn. 4.) Although receiving stolen property is a general intent crime, "[w]ith regard to the knowledge element, receiving stolen property is a ' "specific intent crime" ' as that phrase is used in sections 22, subdivision (b) and 28, subdivision (a)." (*Russell,* at p. 1425.) Thus, as relevant here, a successful defense of *both* offenses required only that defendant's mistaken beliefs be actual, not reasonable.

Defendant's claimed mistakes of fact were that he thought he had lawfully borrowed the car from Rakellah and that he did not know it was stolen. The jury was not instructed that defendant's mistake as to Rakellah's ownership of the car and his lack of knowledge that the car was stolen, even if unreasonable, negated the necessary intent as to both offenses. This intent was the primary issue in dispute as to both charges.

As to the unlawful driving charge, the prosecution argued defendant's specific intent for each offense was established if defendant knew the car was stolen when he drove it. The prosecution emphasized the condition of the car's paint job, defendant spray painting the car to avoid unwanted attention, the tools in the trunk, the wrong license plate on the rear of the car, and license plates in the backseat, including the correct license plate. The evidence supporting defendant's claim that he believed he had permission to drive the car from Rakellah and did not know the car was stolen was not so comparatively weak that there is no reasonable probability of a different result had the jury been correctly instructed. Defendant testified he borrowed the car from his friend, Rakellah, who had an auto body shop. The car was poorly painted and missing a front plate, but that was not necessarily inconsistent with coming from a shop; in fact the car's condition made it more likely to be a loaner car. Defendant, himself a mechanic, was given the specific key to the vehicle by Rakellah. The car did not have a "ripped"

10

ignition or show any indication of having been hot-wired. At the scene, defendant expressed surprise when Richardson informed him the car was stolen. A few days earlier, defendant had previously been stopped while driving the car and there was no evidence presented that any information surfaced during that stop indicating the car was stolen. As correctly found by the trial court, this was substantial evidence supporting defendant's claim of mistake of fact. It is not so comparatively weak when compared to the evidence supporting the judgment as to merit our excusing the error.

Without citing any additional authority, the Attorney General adds a short argument for harmless error that again asserts the given instructions "sufficiently addressed intent" and concludes that the jury necessarily found the "requisite, wrongful intent" with its guilty verdicts. Although we acknowledge that under certain circumstances, the fact that the jury necessarily found the required elements of the crimes at issue can render an error harmless because " 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions' " (*People v. Wright* (2006) 40 Cal.4th 81, 98), that is not the situation here. As we have explained, the fact that the jury found guilt without the benefit of the instruction outlining a supported defense to both charges--that is, while deprived of the required guidance as to how to evaluate proof of critical elements of both disputed charges--does not signal harmlessness here.

The mistake of fact instruction "would have clarified the knowledge element by ensuring that the jury understood that a good faith belief, even an unreasonable good faith belief, would negate one of the elements of the offense. The instruction[] also would have drawn the jury's attention to facts that could raise a reasonable doubt about defendant's guilt. In our view, instructions on the applicable defenses would have been more valuable to the jury than instructions regarding the elements of the offense plus attorney argument that the prosecution had not proven the knowledge element because defendant believed [Rakellah owned the car and had given him permission to drive it].

11

When the court instructs on the law, it provides a framework for the jury's analysis and judicial recognition of the applicable defenses." (*Russell, supra,* 144 Cal.App.4th at p. 1433.) Here, as in *Russell*, because there was substantial evidence supporting defendant's claim of mistake of fact and no instruction clarifying that even an unreasonable belief that the car was rightfully owned by Rakellah and correspondingly, *not* stolen, negated elements of both offenses, " 'there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result." ' " (*Russell,* at p. 1432.)

We conclude it is reasonably probable defendant would have obtained a more favorable result had the jury been correctly instructed. We therefore reverse the judgment.[2]

DISPOSITION

The judgment is reversed.


/s/
Duarte, J.

We concur:


/s/
Raye, P. J.


/s/
Hoch, J.

---

[2] Because we reverse the judgment, we need not and do not address defendant's claim regarding his costs of probation.

12