Filed 10/19/20; See dissenting opinion

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ISAIAH HENDRIX,<br><br>    Defendant and Appellant. | 2d Crim. No. B298952<br>(Super. Ct. Nos. 2018037331,<br>2017025915)<br>(Ventura County) |

    Isaiah Hendrix appeals his conviction, by jury, of first degree burglary.  (Pen. Code, §§ 459, 460.)[1]  The trial court sentenced appellant, a second strike offender, to nine years in state prison.[2]  Appellant was also sentenced on a separate probation violation matter to a consecutive term of one year.  He contends the trial court erred when it instructed the jury on

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

[2] The sentence is comprised of the low term of two years, doubled under the Three Strikes law (§§ 667, subd. (e)(1), 1170.12, subd. (b), (c)(1)), plus a five year enhancement for a prior serious felony conviction.  (§ 667, subd. (a)(1).)

mistake of fact. He further contends the trial court abused its discretion when it "failed" to strike his prior robbery conviction in the interest of justice (§ 1385) and that his sentence constitutes cruel and unusual punishment under both the state and federal constitutions. We affirm.

*Facts and Proceedings*

July 2017 Robbery (case no. 2017025915). Appellant was stopped by a Costco employee after he tried to enter the Oxnard store without a membership card. He said his mother was inside and asked to be escorted to her. The employee went with him as he walked through the store, supposedly looking for his mother. When they reached the alcohol section, appellant put a bottle of tequila into his shorts. He left the store with the bottle in his shorts and without paying for it. When confronted, appellant threatened to harm the Costco employee. He was arrested for robbery.

In October 2017, appellant's attorney declared a doubt as to his competency to stand trial. After evaluation, he was committed to the Department of State Hospitals for treatment. In August 2018, appellant was found competent. He pleaded guilty to one count of second degree robbery. On September 24, 2018, the trial court granted appellant 36 months' formal probation on the condition that he serve one year in county jail with credit for time served. He was then released from custody.

October 2018 Burglary (case no. 2018037331). At 7 a.m. on October 28, 2018, appellant knocked loudly on the front door and rang the doorbell of a house on Indiana Drive in Oxnard. Artrose Tuano, who lived in the house with his parents was at home and watched the video being recorded by his home security system. He saw appellant walk through a side gate and into the back

2

yard.  Appellant tried to open a side door that led to the garage. He also opened a screen door and then tried to force open a sliding glass door leading into the house.  When he could not get in the house, appellant sat down on a bench in the backyard. Tuano called the police.

Police officers arrived and found appellant sitting in the backyard.  Appellant said that he was there to visit his cousin Trevor who lived in the house, but nobody answered the door.  He said a friend told him that Trevor had moved to this new house. As luck would have it, Oxnard Police Officer Vines knew Trevor because they went to high school together and, Officer Vines also knew that Trevor had not moved recently.  He was still living several blocks away.  Appellant was arrested for residential burglary.

While appellant was in custody awaiting trial, he had recorded telephone conversations with his mother and one of his uncles.  In a November 2018 call, appellant told his mother that he needed a witness who could "speak up for me or something and say I gave him the wrong address . . . [a]nd then that's why he knocked on the door and did what he did because he thought it was his cousin Trevor's house."  Two days later, he asked his mother if she had the situation "under control or do I need somebody – do I need to call one my friends to do it for me?"  She replied, "To do what?"  Appellant said he needed the person "to say that they gave me the wrong address and everything." Appellant's mother refused to get involved.  "Oh. No. You need to do – one of your friends [to] do that crap.  I ain't getting nobody caught up or doing any type of drama or lying."

About a week later, appellant spoke with his Uncle John on a recorded telephone call.  John reminded appellant that

3

authorities recorded every call. Appellant said he knew, but "it's not like they really listen." Uncle John disagreed, "Yeah, they listen, dude. They record everything you say." He also chided appellant for "all that crazy shit you be talking and doing and then you're running around breaking in people's house." He asked what appellant was doing, and appellant answered, "I don't know."

Appellant did not testify at trial. The defense rested without presenting evidence.

*Discussion*

Instructional Error

Appellant requested that the trial court instruct the jury on mistake of fact as outlined in CALCRIM No. 3406. The prosecutor requested that "all the 'reasonably' brackets get included" in the instruction given to the jury. Appellant's counsel "submitted" on that issue. The trial court erroneously included the bracketed language in the instruction based upon the erroneous advice of the prosecutor. Everyone should have read the "Bench Notes" which says to not use "reasonable" for a specific intent crime.

The trial court instructed the jury as follows: "The defendant is not guilty of burglary if he did not have the intent or mental state required to commit the crime because he [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as he [reasonably] believed them to be, he did not commit burglary. [¶] If you find that the defendant believed that defendant's cousin Trevor resided at the home [and if you find that belief was reasonable], he did not have the specific intent or mental state required for burglary. [¶] If you

4

have a reasonable doubt about whether the defendant had the specific intent or mental state required for burglary, you must find him not guilty of that crime." (CALCRIM No. 3406.)

A good faith mistake of fact "'is a defense when it negates a required mental element of the crime . . . .'" (*People v. Navarro* (1979) 99 Cal.App.3d Supp. 1, 10 (*Navarro*).) The mistake of fact need not be objectively reasonable. It need only be subjectively believed.

In *Navarro,* for example, the defendant was charged with grand theft for taking four wooden beams from a construction site. There was, however, evidence that the defendant believed the site had been abandoned and that the owner had no objection to his taking the beams. The trial court instructed the jury that the defendant's mistake of fact was a defense to theft only if it was both honest and objectively reasonable. *Navarro* concluded the trial court erred. "It is true that if the jury thought the defendant's belief to be unreasonable, it might infer that he did not in good faith hold such belief. If, however, it concluded that defendant in good faith believed he had the right to take the beams, even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable man, defendant was entitled to an acquittal since the specific intent required to be proved as an element of the offense had not been established." (*Id*. at p. 11, fns. omitted; see also *People v Russell* (2006) 144 Cal.App.4th 1415, 1426-1427 (*Russell*), disapproved on other grounds in *People v. Covarrubias* (2016) 1 Cal.5th 838, 874, fn. 14.)

Here, appellant told police that he entered the Tuano backyard and tried to force entries believing this to be his cousin Trevor's house. If appellant subjectively believed that he was at

Trevor's house, the jury could, in theory, have found that he did not have the mental state required for burglary. The trial court erred when it instructed the jury that such a belief had to be objectively reasonable.

*Harmless Error*

The instructional error was harmless. There is no reasonable probability appellant would have obtained a more favorable result had it not been made. (Cal. Const. Art. 6, § 13; *People v. Zamani* (2010) 183 Cal.App.4th 854, 866; see also *Russell*, *supra*, 144 Cal.App.4th 1415.) Appellant told the responding officers that he believed Trevor lived at the Tuano house because a friend told him Trevor had moved. That was it. There was no other evidence from which the jury could have concluded appellant subjectively believed that statement.

In conducting a harmless error analysis, we look to the entire record. Based upon the paucity of evidence, appellant's "mistake" did not make sense to the jury. It does not cohere on appeal either. Officer Vines testified Trevor had not moved to the house. Appellant was the only person who said that he thought that Trevor had moved to the victim's residence.

We must observe that the story appellant told the police was a fabrication. No cousin who wanted to visit a relative would make multiple forcible attempts to enter the house and a garage. This is the method of operation for a residential burglar. It is not the method of operation for a family visit. It must be emphasized that appellant did not testify that he subjectively believed cousin Trevor lived at the scene of the burglary. He did not call as a witness the person who allegedly told him that cousin Trevor moved to the house. His name is unknown. His description is unknown. His whereabouts are unknown. There is a disconnect

6

here. Even if appellant subjectively believed that cousin Trevor lived at the house, that did not give him the right to attempt entry, multiple times, by force. Would a person who subjectively believes that a cousin lives at a residence also think that the cousin would allow forcible entry for a social visit?

Appellant actively solicited his mother to procure a witness who would so testify that he told appellant that cousin Trevor had moved to the house. She flatly refused. When Uncle John accused him of committing the residential burglary and asked him what he was doing, appellant replied, "I don't know." This is not the comment of a person who subjectively believed that cousin Trevor lived in the house. There is no miscarriage of justice in this case.[3]

Claimed

Sentencing Error

The trial court used appellant's July 2017 robbery conviction as a first "strike" and as a five-year prior serious

---

[3] We opine that appellant, obviously, has some mental impairment. There is no evidence of what he was thinking while sitting in the backyard. He could have been pondering on the whereabouts of cousin Trevor. Or maybe he was pondering on his next attempted point of entry. But we do not believe that a friend told him the cousin Trevor had moved to the victim's house. It seems much more likely, consistent with the prosecutor's theory, that appellant made up this excuse to avoid arrest. Even his own mother would not help secure a corroborating witness. She did not want to help him in his "lying." (Ante, p. 3.)

So, the police did not believe him. The prosecutor did not believe him. His mother did not believe him. The jury did not believe him. The trial court did not believe him.

7

felony conviction for purposes of sentencing.  Appellant contends the trial court abused its discretion.  We disagree.

In determining whether a prior serious felony should be dismissed for sentencing purposes, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)  We review the trial court's refusal to strike a prior conviction for abuse of discretion.  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Appellant's adult criminal history includes six prior theft and robbery convictions.  He has never successfully completed probation.  The current offense is the serious felony of residential burglary, which appellant committed while a resident was inside the home.  Appellant appears to have some mental impairment but presents no other mitigating circumstances.  This is not an extraordinary case where appellant must be "deemed outside the . . . spirit" of the Three Strikes law. (*Williams, supra,* 17 Cal.4th at p. 161.)  There was no abuse of discretion.

Claimed

Cruel and Unusual Punishment.

Appellant contends his 10-year sentence violates the federal and state constitutional prohibitions against cruel and unusual punishment.  We disagree.

8

In non-capital cases, the Eighth Amendment to the federal Constitution contains a "narrow proportionality principle," which prohibits the imposition of a sentence that is "'grossly disproportionate to the severity of the crime.'" (*Ewing v. California* (2003) 538 U.S. 11, 20-21.)  In determining whether a lengthy sentence imposed under a recidivist sentencing statute is unconstitutionally excessive or disproportionate, a reviewing court determines whether the challenged sentence constitutes cruel and unusual punishment "*as applied to the specific circumstances involved in the case at issue.*"  (*In re Coley* (2012) 55 Cal.4th 524, 553 [emphasis original].)

Appellant's current felony is first degree burglary, a serious felony under section 1192.7.  The sentencing range for this offense is two, four or six years, reflecting our Legislature's assessment of its severity.  (§ 461, subd. (a).)  He committed the burglary about one month after his release from custody for his prior robbery conviction.  The trial court imposed a term of nine years in state prison by selecting the low term of two years for the burglary, doubling that term based on appellant's prior "strike," and then adding a five-year enhancement term for his prior serious felony conviction.  This sentence is well within the maximum statutorily authorized term for a second-strike burglary and it bears a rational relationship to the anti-recidivist purposes of the Three Strikes law.  We conclude the sentence does not violate the Eighth Amendment.  (*In re Coley*, *supra*, 55 Cal.4th at pp. 558, 561-562.)

Our state constitution also prohibits cruel or unusual punishments.  A sentence that is within the statutorily authorized term for an offense may be said to violate the California Constitution only where the punishment is so

9

disproportionate "that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) Here, appellant has a history of committing theft and robbery. His current offense is even a more serious offense because he intruded into a family home while a resident was inside. He committed this offense only about one month after being released from custody. Given appellant's status as a recidivist whose offenses are growing more serious, the sentence imposed does not shock the conscience or offend fundamental notions of human dignity. (See, e.g., *People v. Cooper* (1996) 43 Cal.App.4th 815, 825-826.)

CONCLUSION

The judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, Acting P. J.

I concur:

PERREN, J.

10

TANGEMAN, J., Dissenting:

I respectfully dissent. The majority conclude that the trial court erred in instructing the jury that appellant's mistaken belief that he was at his cousin's house had to be "reasonable" to constitute a defense, but also conclude that the legal error was "harmless." Given the facts of this case, that second conclusion is unwarranted.

The proper test for determining whether misinstruction on an element of the offense is prejudicial is the "harmless beyond a reasonable doubt" standard of *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1013.) The *Chapman* test has been described as a "stricter" test than the reasonable probability test of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1160.)

Appellant has a history of mental illness. Indeed, he was found not competent to stand trial in a prior case and was committed to the Department of State Hospitals for almost one full year for mental health treatment. He was released from that commitment only two months before this incident occurred. This is not an insignificant fact, although it is glossed over in the majority opinion.

Moreover, the underlying facts of this case readily show that appellant was not of 'sound mind' on October 28, 2018. After loudly knocking and ringing the doorbell, appellant walked around the house, tried to force open a door and, when unsuccessful, simply sat down in the backyard, and waited. Waited for what? His cousin? Or, as the majority apparently posits, for the police to arrive to arrest him (which conclusion is inconsistent with his surprise at seeing the police). He had no

1

burglary tools when arrested and made no further efforts to enter the house. He simply sat down and waited.

The majority disregards this evidence because appellant's cousin lived several blocks away, on the "opposite side of Pacifica High School." Apparently this proves that appellant was not mistaken at all, because he couldn't have been confused or lost. This logic fails me.

The majority also seizes upon appellant's post-arrest call to his mother, while in custody once again soon after his discharge from the Department of State Hospitals, pleading with her to lie for him. Again, apparently this proves (beyond a reasonable doubt) that appellant knew all along that he was not at his cousin's house. Or does it? Maybe it shows only how desperate he was to get out of custody.

Undeterred by these troubling facts and the stringent requirement that we reverse unless convinced that any error was "harmless beyond a reasonable doubt," the majority substitutes its own judgment, based on a cold record, about appellant's credibility and true intentions. Given appellant's recent mental health history and inexplicable conduct on the day in question, I cannot in good conscience conclude that no reasonable juror might have reached a different result if properly instructed.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

Paul W. Baelly, Judge

Superior Court County of Ventura

_____

Adrian Dresel-Velasquez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Acting Supervising Deputy Attorney General, John Yang, Deputy Attorney General, for Plaintiff and Respondent.